**PEASE BROTHERS, INC., Appellant**
(Defendant below),

v.

**AMERICAN PIPE & SUPPLY CO.**
(Defendant below),

**P. A. Coleman et al., Appellees**
(Plaintiffs below).

**No. 4294.**

Supreme Court of Wyoming.

May 28, 1974.

Donald P. White, of White & Hansen, Riverton, for appellant.

Donald E. Chapin, Casper, for appellee Coleman.

George M. Apostolos, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellee American Pipe & Supply Co.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and Mc-CLINTOCK, JJ.

Mr. Justice McCLINTOCK delivered the opinion of the Court.

Pease Brothers, Inc.[1] appeals from the order of the district court of Natrona

1. One of two defendants below and hereinafter referred to as Pease. Its designated codefendant, but now one of the appellees, American Pipe & Supply Co., will be referred to as American, and the plaintiffs-appellees will be collectively referred to as Coleman or plaintiffs.

County, Wyoming denying its motion to vacate default judgment theretofore entered after this defendant had failed to appear and plead in the action.

By judgment entered in the district court of Campbell County, Wyoming on May 6, 1972 the three plaintiffs herein were awarded separate judgments and accrued interest against Pease totaling $58,898.71. As part of execution proceedings out of that court they thereafter caused garnishment notice to be served upon American. Its answer acknowledged an indebtedness to Pease after payment of existing indebtedness of $34,457.94, which sum it claimed could be reduced by setoffs which could amount to $16,000.00. It was also stated that American had in its possession certain damaged pipe belonging to Pease, the future storage and cost of removal of this damaged pipe being the basis of the contingent setoff of $16,000.00.

No further proceedings appear to have transpired in that execution and on April 12, 1973 the present action was commenced in the district court of Natrona County by these same plaintiffs against American and Pease as defendants. The first claim of the complaint alleges the entry of the judgment, the issuance of garnishee notice, answer by American, a copy thereof being attached to and incorporated in the complaint, and that the disclosures therein are unsatisfactory. It is then alleged that the present action is commenced against American pursuant to the provisions of §§ 1–430 and 1–256, W.S.1957 for determination of the amount of property and credits of every kind of Pease in the possession of American. The second claim, directed

against Pease, alleges that the amount due from American to Pease arises from a contract between the two defendants whereby Pease undertook to do certain work in the excavation and removal of a pipe line which had been purchased by American and the right to relief by plaintiffs against American cannot be adequately determined without the designation of Pease as a party defendant. The complaint prays for determination of the amount due from American to Pease; judgment against American Pipe for all property, credits, money, and every other asset in the possession of American owned by or owed to Pease, to an amount sufficient to satisfy its existing judgment against Pease; and

> "3. Such other and proper relief as to afford complete adjudication of the rights and obligations between plaintiffs and the defendants or either of them and between the defendants."

Signed summons bearing the seal of the court addressed to American was issued April 12 and bears a notation of acceptance of service by the attorney who later appeared in behalf of American.

Unsigned summons [2] bearing no official seal, addressed to Pease, likewise was issued on April 12 and the return thereon shows that it was served by the deputy sheriff of Campbell County on April 14, by delivery "to Pease Brothers, Inc. (by leaving with Roy Lind, agent) in person and personally, in Campbell County, Wyoming".

On April 17, 1973 plaintiffs filed a request to the clerk to mail a copy of the complaint and summons to "said defendant corporation,[3] registered mail with return

---

2. This summons bears the typed names and printed titles "Ralph L. Distad (Clerk of court) by Joyce Johnson (Deputy Clerk)" and also stamped circle with the word "SEAL" therein, but does not bear any written signature or the official seal of the court as was the case on the separate summons served on American. Rule 4(b), W.R. C.P. states that the "summons shall be signed by the clerk, [and] be under the seal of the court  *  *  *".

3. This is the first reference in the record to the capacity of this defendant. Nowhere in the record is it disclosed whether Pease is a foreign or domestic corporation, but taking judicial notice of the records in the office of the secretary of state, 31 C.J.S. Evidence § 36, p. 967, we find that no certificate of incorporation, either foreign or domestic, has been filed for this corporation and therefore proceed on the premise that it was and is a foreign corporation. This is

receipt requested, at its last known address, 120 East Main, Vernal, Utah, 84078", which request was made pursuant to provisions of Rule 4(d)(4), W.R.C.P. for personal service upon a corporation. Attached to the clerk's certificate of mailing is a postal receipt for certified mail dated April 17, 1973, No. 130851. The record also contains an unopened envelope addressed by the clerk to Pease Brothers, Inc., at the above Utah address, postmarked in the Casper post office April 17, 1973 with stamped notation thereon that first notice was given April 20, 1973 and "2nd Notice Return" May 5, 1973. It also is stamped "Returned to Writer, Reason Checked, Unclaimed X". This envelope apparently was returned to the Casper post office on May 9, 1973 and thereupon returned to the clerk of the court.

On May 7, 1973 American filed its answer addressed to the first claim,[4] denying for want of information the allegations concerning the Campbell County judgment and payment thereon, admitting that it had received the garnishee notice and filed its answer, copy of which had been attached to plaintiffs' complaint and by reference thereto incorporated the same in this answer. All other allegations of the complaint were denied.

Without affirmative allegations or cross-claim against Pease, American demanded judgment against the plaintiffs and Pease jointly and severally: declaring and determining the amount of money due from American to Pease; declaring what property, if any, belongs to or is the property of Pease; determining the disposition of any money found to be owed by it to Pease and the disposition of any property that may be owned by Pease; discharging American as garnishee upon the court's making the foregoing determinations and dispositions; for such other and proper relief "as to afford a complete adjudication of the rights and obligations among plaintiffs and defendants or either of them, and as between the defendants"; and for costs of action and any other relief that might be proper.

Pease filed no answer or other pleading and on May 8, 1973 attorney for the plaintiffs filed an affidavit for entry of default, reciting the foregoing facts concerning the service and mailing, and also claiming that time for answer had expired and Pease had neglected and failed to answer or otherwise plead. Pursuant thereto, and on May 8, 1973, entry of default was entered by the clerk, reciting the facts of service, mailing, and failure to plead.

The judgment entered May 21, 1973[5] shows appearances by attorneys for plaintiffs and American. It recites the facts concerning service upon and mailing to Pease as above set forth, and the entry of default by the clerk. It is then recited that after hearing the court found that personal service had been made on Pease within the state of Wyoming as required by law and applicable rules, "and that the court now

---

confirmed by Pease's brief and not denied by appellees.

4. Certificate of service attached to this pleading shows that a copy thereof had been left with the clerk of the court "for delivery to the attorney for Pease Brothers, Inc., on this 7th day of May, 1973". At that time there was no attorney of record for Pease and it does not appear that a copy of this answer was mailed to Pease directly or to its attorney. Neither the record nor the briefs disclose when this answer may have come to the attention of Pease or its attorney.

5. This judgment, presented to the trial judge within 20 minutes after the hearing had started as the "judgment we have agreed upon" must have been prepared in advance of the hearing. The amount found to be due from American to Pease is entirely based on the calculations of American's manager as to the amount due after charging Pease with the purchase price of some 36,000 feet of allegedly damaged pipe under this provision of the agreement: "Any pipe which Contractor shall flatten, dent or mash so that the same may not be properly repaired by Contractor for use shall be purchased by the Contractor at $1.75 Per Foot. The price of the pipe purchased by the Contractor shall be deducted from contract price at the final payment."

has jurisdiction over all of the parties to and the subject matter of this action; that defendant Pease Brothers, Inc. is in default and its default is hereby entered".

It is further found that Pease is indebted to plaintiffs for a total amount of $54,651.11; that American, in obedience to the garnishee notice, has retained funds owed by it to Pease in the amount of $37,845.44; and that in addition American is holding 36,421 feet of 12¾" O.D. pipe owned by defendant located at three separate places in the state of North Dakota, which it is holding subject to the further order of the court.

Judgment was then entered that American was indebted to Pease

"in the total amount of $37,845.44, which amount is in full satisfaction of any and all rights and claims which defendant Pease Brothers, Inc. may now have or could hereafter assert against American Pipe & Supply Co. arising out of or accruing in connection with or on account of the performance of that certain agreement between said defendants dated July 17, 1971, which agreement provided for the removal by Pease Brothers, Inc. of a pipeline of 12¾" O.D. pipe extending 36 miles from Golva, North Dakota and about 27 miles of 12¾" O.D. pipeline commencing south of Dickinson, North Dakota, and other services relating to the removed pipe."

It was then ordered that American pay plaintiffs the sum which it owed Pease for application upon plaintiffs' judgment,

"and forthwith deliver to the plaintiffs all of said pipe owned by defendant Pease Brothers, Inc. in its present condition in the yards in which it is now situate as aforesaid, and that upon such delivery, made to the satisfaction of the Court, defendant American Pipe & Supply Co. shall be released from any further obligation to the plaintiffs under the

garnishment proceedings or to Pease Brothers, Inc. under said July 17, 1971 agreement or otherwise." [6]

On May 25, 1973 Pease, acting through present Wyoming counsel, filed motion to vacate and set aside the judgment and to grant leave to defendant to file an answer or otherwise plead in said cause, on the ground that through mistake and inadvertence answer or other pleadings were not filed in its behalf within the time required by law, as shown by the affidavit of attorney attached. The gist of this affidavit is that on May 9 (one day after default had been entered by the clerk) Wyoming counsel had received a call from Salt Lake City counsel about the matter, had discussed the case briefly, and it was agreed that the complaint and other pertinent documents would be forwarded to Wyoming counsel who would then contact opposing counsel. It further appears that while a letter of transmittal was written in Salt Lake City on May 10, the envelope bearing the enclosures was not postmarked in the Salt Lake City post office until May 22, and was received on May 23 by Wyoming counsel who immediately called the attorney for the plaintiffs and was informed by his secretary that judgment had been entered on May 21. It is further alleged in the affidavit that fairness and equity demand that the judgment should be vacated and set aside and the respective rights of the defendants and the claims and demands between them be adjudicated and determined by the court after due notice and hearing.

Prior to hearing on the motion to vacate there was filed affidavit of Ray Pease, president of the corporation, referring to the contract between it and American, stating that a substantial dispute had arisen with respect to the amount due Pease, which claimed that American owed it some $152,000.00 as of April 1, 1973, that numerous contacts and cummunications attempt-

---

6. The record, filed in this Court on September 25, 1973 and presumably the complete record in the case, does not show that subsequent to entry of this judgment any showing was made or that the court indicated its satisfaction with the delivery of the pipe to plaintiffs.

ing to settle the dispute had failed, and that the dispute must be settled through court proceedings in which both parties are allowed to present their claims. A counter affidavit of O. C. Major, manager for American, was filed, reciting the facts concerning the court proceedings which we have related and recapitulating the various events and the delays of Pease after time for answer had expired. It was further set forth that on the date of the judgment he had given American's check for $37,845.44 to the clerk of the court who in turn had given plaintiffs his check in the same amount; that he had also on that same date delivered to plaintiffs approximately 36,421 feet of pipe located in North Dakota, which delivery of pipe had been accepted and acted upon by the plaintiffs; that leases on storage yards for the pipe had been surrendered by American to plaintiffs and plaintiffs are now responsible therefor.

A hearing was held on July 3 at which no further evidence was taken but arguments of counsel were presented, and on July 5 letter opinion of the trial judge was issued indicating that the motion would be denied and giving reasons therefor. Order was entered July 18 finding that Pease had failed to demonstrate an excuse for not defending the cause, had failed to act in good faith, and had failed to show a meritorious defense; that other parties had undergone a change of circumstances; and that it would be inequitable to set aside the default. The motion to vacate was denied. Notice of appeal was filed July 31, 1973.

Upon this appeal Pease contends first that it was an abuse of discretion to deny its application to vacate the default judgment entered against it but raises the further point, not made in any of the proceedings below, that the default judgment was entered without jurisdiction of the person of the defendant, Pease, and was therefore null and void. While asserting that the jurisdiction over Pease was properly obtained, American and Coleman contend

that in any event the question of jurisdiction of the person has been waived.

We believe that the second point is dispositive of this appeal. It has been said by the Supreme Court of Ohio in Lincoln Tavern v. Snader (1956), 165 Ohio St. 61, 133 N.E.2d 606, 610:

"It is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void."

The Supreme Court of Virginia in Finkel Outdoor Products, Inc. v. Bell (1965), 205 Va. 927, 140 S.E.2d 695, 698, expresses the rule:

" 'Judgments without personal service of process within the state issuing it, or its equivalent, *or upon a service of process in a manner not authorized by law*, are void judgments, and may be so treated in any proceeding, direct or collateral. * * *' Burks Pl. & Pr., 4 ed., § 353, pp. 667–8." (Emphasis supplied.)

Other cases holding that a judgment by default cannot properly be entered unless the defendant is brought into court in some way sanctioned by law are: State ex rel. Bowman v. Malloy (1965), 264 N.C. 396, 141 S.E.2d 796, 797; Ponca Wholesale Mercantile Company v. Alley (Tex.Civ. App.1964), 378 S.W.2d 129, 131 (service upon a corporation by delivery to "Manager Don Landers" instead of the registered agent for service of process); Wilson v. Wilson (Tex.Civ.App.1964), 378 S.W.2d 156, 159 (citation required answer at time different than that fixed by law); State ex rel. Ballew v. Hawkins (Mo.App.1962), 361 S.W.2d 852, 857 (service of process made after return day stated in summons); and Brown v. Amen (1961), 147 Colo. 468, 364 P.2d 735, 737 (summons not signed by the clerk). Both Bryant v. Lovitt (1957), 231 Miss. 736, 97 So.2d 730, 731, and Braun v. Quinn (1920), 112 Neb. 485, 199 N.W. 828, 829 held that process could not be issued from one county and served upon

the defendant in another county, being his place of residence. In 62 Am.Jur.2d Process 49, p. 831 the authorities are summarized as holding that in the absence of a controlling practice provision, service in another county on an action for money judgment does not give jurisdiction over the person of the defendant. "If he fails to appear, a judgment rendered upon such service is void."

In State ex rel. Minihan v. Aronson (1942), 350 Mo. 309, 165 S.W.2d 404, 407 the Supreme Court of Missouri considered a situation where summons was issued to and served in a different county from that where the action was filed. Motion to quash the service was denied, whereupon prohibition proceedings were commenced in the Supreme Court. It was said that a summons is

> "the means of compelling a defendant to subject his person to the jurisdiction of the court from which the summons issues. * * * Until such notice is given, that is, such a notice as compels the defendant to take cognizance of it, the court has no authority to proceed against the party defendant, even though the court may have jurisdiction of the subject matter of the action. * * *
>
> "Subject to certain limitations not involved here, service of process is wholly a statutory matter. * * * Consequently, the general rule is that unless a defendant is served with process, or summoned, in some manner authorized by statute law the court is without authority to proceed."

■ Counsel for Pease contends that service upon Pease by delivery of copy of the summons and complaint to Lind, employed by Pease as a heavy equipment operator, was not service upon an "officer, manager, general agent, or agent for process" in compliance with Rule 4(d)(4), W. R.C.P. While the record shows that Lind was an employee of Pease, he was not "found in the county in which the action is brought" and we therefore agree that serv-

ice was not made in conformity with the rule. Under the above authorities, then, the court did not have jurisdiction over Pease.

Ford Motor Company v. Arguello (Wyo.1963), 382 P.2d 886, 897, cited by appellees for the proposition that due process requires only that the representative served be a responsible representative of the foreign corporation, is not contrary to the position we take. It is there held that Rule 4(d)(4) is cumulative to statutes pertaining to service upon and acquisition of personal jurisdiction over foreign corporations that have done business in the state of Wyoming without qualification and designation of an agent for service. Upon the facts of that case there had been sufficient contact of Ford with the state of Wyoming to render it amenable to process of our courts, a question not raised in the present case, but the service of process there approved was made in the county in which the action was filed and was clearly in compliance with the rule.

Nor do we think that this decision is contrary to our holding in State ex rel. Sheehan v. District Court of the Fourth Judicial District (Wyo.1967), 426 P.2d 431, 435, cited by appellees as holding that there is a presumption of jurisdiction from the fact that it was exercised. It was held that the presumption had not been rebutted. However, both 21 C.J.S. Courts § 96, p. 149 and Jackson v. Bobbitt, 253 N.C. 670, 117 S.E.2d 806, cited therein, clearly qualify the existence of the presumption with the statement that "unless the contrary appears, as by the record", the presumption applies. In the case at bar the record clearly shows that service was made upon an employee of Pease, outside the county in which the action was brought.

Our holding does not mean that the action could not be commenced in and process properly issued out of Natrona County for service in another county. Section 1-36, W.S.1957, specifically provides that an action against a foreign corporation may

be brought in the county where the action arose or the plaintiff resides, and further:

"Summons may be issued to the sheriff of the county where the agent for service of the foreign corporation resides or, if there is not such agent in this state, to the sheriff of Laramie County, Wyoming for service on the secretary of State of Wyoming and, in such case such service shall be deemed service upon such foreign corporation * * *."

Section 17–36.104, W.S.1957, C.1965, further relates to service upon a foreign corporation, particularly one that has done business in the state without qualification or if authorized to do business has failed to appoint or maintain an agent for service, by permitting service of the process upon the secretary of state. Subject to the limitation expressed in *Ford Motor Co.,* that mere service of summons upon a representative of a foreign corporation in the state does not of itself confer jurisdiction upon the trial court,

"and that it must also appear that Ford, as a foreign corporation, was at the time of service engaging in activities within the state sufficient to make it amenable to jurisdiction of the court from which the process issued",

it appears that if Pease was doing business within the state of Wyoming without having qualified as a foreign corporation it was amenable to service of process out of Natrona County by the sheriff of Laramie County upon the secretary of state.

Had Pease included with his motion to vacate the default judgment a motion to quash the service it in all probability would have been sustained. However, no such motion was made to the trial court and that court had no opportunity to pass upon the question.

Appellees contend that Pease waived the defense of improper service by not raising the question in the district court and again cite State ex rel. Sheehan v. District Court of the Fourth Judicial District, *supra.* We there held that Mrs.

Sheehan, by filing motion attacking the action for lack of jurisdiction of the subject matter and failure of the complaint to state a claim, had submitted her person to the jurisdiction of the court and under the provisions of Rule 12(b) and (h), W.R.C. P., had thereby waived any defense as to the insufficiency of the process. We further recognized the general rule that it is necessary to question jurisdiction of the court over the person at the earliest opportunity, failing in which the defense will be considered waived.

It is of course elemental that voluntary appearance of the defendant is equivalent to service of process, and in this case had Pease entered its appearance prior to judgment and filed some sort of pleading to the merits of the case without questioning the service, it would be a clear waiver under Rule 12(h). But here we are considering the validity of a default judgment entered without proper service and it would seem anomalous indeed that having tendered its appearance in the case only for the purpose of setting aside the judgment and being permitted to participate, and having been denied that right, offer to appear rendered valid a previously void judgment. Vacation having been refused, does it not follow that the judgment remains in the same status that it was, subject to the same defects, and still vulnerable to attack? As said in Bryant v. Lovitt, *supra,* 97 So. 2d at p. 733, where default judgment had been entered in improper service: "Subsequent proceedings could not breathe life into the prior dead judgment."

In Jones v. Colescott (1957), 134 Colo. 552, 307 P.2d 464, 465, a default judgment had been entered against certain defendants, based upon service which the court found to be defective. Four of these defendants filed motion to vacate the judgment. The court said:

"* * * As to the four defendants who filed the motion to vacate the judgment, the court now has jurisdiction, but only to grant time to plead or answer to the complaint herein. The general ap-

pearance did not validate the void judgment. However, as to the defendants who did not join in the motion and the unknown defendants, the attempted substituted service by publication is void. The plaintiffs must now begin anew to obtain service on them."

In Brown v. Amen, *supra*, 364 P.2d at p. 737, the court adhered to earlier rulings that where the summons had not been signed by the clerk it was ineffective to bring the defendants within the jurisdiction of the court, and to its decision in *Jones* that a general appearance has no retroactive effect. Under our view of the law as expressed in these Colorado decisions, Pease may not now further question the service but is entitled to be permitted to plead to the complaint and thereafter participate fully in any trial that may be posed by the pleadings.

■ Appellees place considerable emphasis upon the fact that Lind did in fact forward the summons and complaint to the proper officers of Pease. It has been consistently held that the fact that process, improperly served, is forwarded to proper officials of the corporation does not validate the service. In McDonald v. Ames Supply Co. (1968), 22 N.Y.2d 111, 291 N. Y.S.2d 328, 331, 238 N.E.2d 726, the Court of Appeals of New York says:

"Numerous authorities hold that personal delivery of a summons to the wrong person does not constitute valid personal service even though the summons shortly comes into the possession of the party to be served. * * * A contrary rule would negate the statutory procedure for setting aside a defectively served summons, since the motion itself is usually evidence that the summons has been received * * *."

■ Throughout this opinion we have referred to the judgment sought to be vacated as though it were a default judgment in the ordinary sense and authorities cited by us have pertained to that kind of judgment. This was hardly the ordinary default judgment. The real disputants in the case were Pease and American. While it may be said that the plaintiffs undoubtedly thought in filing their complaint that the parties would appear, cross pleadings would be filed, and the issues between them settled so that plaintiffs would have something tangible against which to enforce their judgment, we find nothing in the prayers of the complaint requesting, as between American and Pease, the grant of specific performance requiring Pease to purchase 36,241 feet of pipe at a price of some $66,000.00, crediting that purchase price thereof against a recovery by it against American of $37,845.44. The prayer of the complaint is completely general and merely that the amount due from American to Pease be determined and that judgment be entered against American for all property, credits, money, and every other asset in the possession of American owned by or owed to Pease to the extent necessary to satisfy its judgment against Pease.

We think that the trial court went far beyond the prayers of the complaint, in violation of the principle which we recently announced in Zweifel v. State of Wyoming ex rel. Brimmer (1974), Wyo., 517 P.2d 493. As declared in Fong v. United States (9 Cir. 1962), 300 F.2d 400, 412:

"In 6 Moore's Federal Practice, 2 ed., Par. 54.61, pp. 1205–1206, it is said: 'Since the prayer-limits the relief granted in a judgment by default, the prayer must be sufficiently specific that the court can follow the mandate of the Rule. * * *'"

We reverse the judgment and remand the same to the district court with instructions to set aside the default judgment and to permit Pease to answer or otherwise plead to the complaint.