772 P.2d 1054 (1989)
STATE of Wyoming, ex rel. TRL, a minor, by Steve M. AVERY, Guardian Ad Litem, Appellant (Petitioner),
v.
RLP and DLL, Appellees (Respondents).
No. 88-253.
Supreme Court of Wyoming.
April 17, 1989.
Myron L. Barton, Riverton, guardian ad litem, Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., and Shirley A. Kingston, Asst. Atty. Gen., for appellant.
Gary A. Barney, Lander, for appellee RLP.
Andrew Baldwin of Wind River Legal Services, Ft. Washakie, Kathleen Ann Mickey of Legal Services for Southeastern Wyoming, Inc., Cheyenne, and Elaine Bodurtha of Community Legal Services, Kingman, Ariz., for appellee DLL.
Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and LANGDON, District Judge.
MACY, Justice.
This is an appeal by the State of Wyoming from the dismissal of its action to set aside a prior order of the district court terminating the parental rights of the father in relation to his minor child. In the unusual posture of this case, both the father and the mother are appellees advocating the validity and finality of the prior termination order and the propriety of the subsequent dismissal of the State's attempted ameliorative action.
We reverse.
The State delineates five issues:
I. Is an order purporting to terminate the rights and responsibilities of a father to his minor child nugatory if the interests of the child were not protected in the proceedings, and the requirements of the termination statute were not complied with?
II. When the needs of the child require, must the State in its role as parens patriae initiate an action in behalf of the child, asserting his fundamental right to a parental relationship with his father?
III. Should it be possible for natural parents to bargain away the rights of their child in pursuit of their own interests, even though they may be adverse to those of their child?
IV. May the doctrine of res judicata apply when the prior proceeding did not *1055 address the interests of the real party in interest, a minor child?
V. May a child be deprived of paternal support and relationship because his maternal parent frustrates the father's rights of visitation; or are there other less harmful remedies?
The dispositive issue, as we see it, is whether the order terminating the father's parental rights is valid and, if not, whether it was subject to a subsequent challenge by the State in an action essentially seeking relief from a void judgment. The other issues raised by the State will not be addressed except as they relate to this controlling issue.
The facts in this case primarily relate to its procedural history, and they are not in dispute. This case is rife with procedural irregularities,[1] caused in no small measure by the machinations of the parents in attempting to avoid their responsibilities, resulting in decisions below in which the self-serving interests of the parents prevailed over the best interests of the child. The child was born out of wedlock on January 22, 1985. Shortly thereafter the mother began receiving public assistance from the State (AFDC). On November 13, 1985, at the behest of the State, the mother initiated a paternity action pursuant to Wyo. Stat. §§ 14-2-101 to -120 (1977) against the father, seeking a declaration of paternity, child support, and reimbursement to the State for support funds expended. A guardian ad litem was appointed for the child in accordance with § 14-2-107. After an informal hearing, a judgment was entered on October 28, 1986, establishing the father's paternity, granting primary custody to the mother with detailed visitation rights for the father, ordering the father to pay $138 per month in child support, and ordering the father to pay certain amounts in reimbursement to the State.
The father apparently made only one support payment. The mother, on the other hand, allegedly denied the father his right of visitation. According to subsequent allegations by the father, the mother apparently requested that the father provide her with a relinquishment of parental rights and a consent to adoption. Consequently, counsel for the father prepared a stipulation, signed by both parents, in which the father agreed to execute a relinquishment of parental rights and consent to adoption in return for which the mother agreed that, upon delivery of same, the father would have no further support obligations and that the mother would pay the amounts assessed against the father in the parentage judgment.[2] On March 4, 1987, counsel for the father filed a copy of this stipulation with the district court, apparently with a request that the court enter an order incorporating the terms of the stipulation.
By letter dated March 9, 1987, the district court contacted the guardian ad litem and counsel for both parents indicating understandable confusion as to the purpose of the stipulation. The letter stated in part:
I am now in receipt of a Stipulation terminating parental rights of the father and apparently abrogating all the terms of the previous Order. I do not understand this at all. I will not sign an order based upon that Stipulation without the approval of the Guardian ad Litem, and without a thorough understanding of why the Stipulation was entered into. It seems to me that this child is deserving of support from both parents and of visitation with his father as originally set up by this Court's Order.
The mother's counsel responded by letter indicating that he no longer represented the mother and that he had no prior knowledge of the stipulation. He further expressed the opinion that changing the paternity *1056 judgment would not be in the best interests of the child.
Nothing further of record occurred until July 22, 1987, at which time the State filed a notice of delinquency indicating the father's child support obligation was in arrears and that income withholding would commence shortly. In a curious turn of events, the delinquency notice was signed by the guardian ad litem in his new capacity as deputy county attorney representing the State in child support enforcement actions. Counsel for the father responded by filing a document designated "PETITION TO STAY SERVICE OF ORDER FOR WITHHOLDING AND NOTICE TO PAYOR," which alleged that the mother had denied the father visitation, that the mother had sought and obtained the stipulation for relinquishment of parental rights, and that she had waived or was estopped from asserting a right of support.[3] The petition requested entry of an order prepared by counsel incorporating the stipulation.
The district court ordered a conference with counsel. On September 29, 1987, the deputy county attorney (formerly the guardian ad litem) and counsel for the father conferred with the district court in chambers. As a result of this chambers proceeding, the district court entered an order on October 14, 1987, ratifying the stipulation and expressly adjudging that the father had no past, present, or future support obligation for the child and ordering that, upon the delivery from the father to the mother of an executed relinquishment of parental rights and consent to adoption, the parental rights of the father were terminated.
On March 2, 1988, the State filed a complaint[4] styled as State of Wyoming ex rel. TRL, a minor, versus RLP and DLL, alleging in effect that the termination proceeding was defective because there was no meaningful representation of the child's best interests by the guardian ad litem. The complaint sought the reimposition of a support obligation upon the father with corresponding visitation rights  in essence, a revival of the original parentage judgment. The mother filed a motion to dismiss alleging, inter alia, a failure to appeal and res judicata. The State responded by brief asserting in part that its action was in the nature of a W.R.C.P. 60(b) motion for relief from judgment. The district court appointed a new guardian ad litem for the child, again pursuant to the parentage statutes, and reassigned the case to a different judge. The father, after being located in Michigan, answered, asserted various defenses  including res judicata, and urged dismissal.
A hearing was held before the new judge on July 12, 1988. The district court concluded that the child was not adequately represented in the prior proceeding. The district court found, however, that the best interests of the child had been considered in the prior proceeding, that the State had failed to appeal, and that the action before the court was an improper substitute for appeal. The State's complaint was therefore dismissed, and this appeal was perfected.
Our inquiry initially focuses on whether the State could attack the October 1987 judgment in the fashion that it did. We agree with the district court that the State's action was unorthodox to the extent that it purported to initiate a new complaint in an action that already had been concluded. We are not convinced, however, that the State's labeling of the complaint is controlling, and we determine that it may properly be treated as a W.R.C.P. 60(b)(4) motion to set aside a void judgment.
In JHL v. BMG, 665 P.2d 491, 498-99 (Wyo. 1983), we quoted with approval the following passages from 46 Am.Jur.2d, Judgments § 49 at 347-49 (1969):
"A void judgment is not entitled to the respect accorded to, and is attended by none of the consequences of, a valid adjudication. * * *

*1057 "Although it is not necessary to take any steps to have a void judgment reversed or vacated, it is open to attack or impeachment in any proceeding, direct or collateral, and at any time or place, at least where the invalidity appears upon the face of the record."
In its trial brief, the State referred to its action as a W.R.C.P. 60(b) proceeding. W.R.C.P. 60(b)(4) provides: "On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (4) the judgment is void." The essence of the State's complaint was that the October 1987 judgment terminating the father's parental rights was void because the child was not represented by a guardian ad litem. We have stated that "`the name or title of the pleading or motion may be disregarded if its contents make its purpose so clear that no one is misled.'" Walther v. Steward, 54 Wyo. 160, 171, 88 P.2d 475 (1939) (quoting Mitter v. Black Diamond Coal Co., 28 Wyo. 439, 445, 206 P. 152 (1922)). We think that rule is applicable here, and we treat the State's action as a motion under W.R.C.P. 60(b)(4).
The granting or denying of relief pursuant to W.R.C.P. 60(b) is a matter within the discretion of the trial court, and our review is limited to the question of whether there has been an abuse of that discretion. McBride v. McBride, 598 P.2d 814, 816 (Wyo. 1979). When the judgment is attacked pursuant to W.R.C.P. 60(b)(4), however, there is no question of discretion  either the judgment is void or it is valid  and, once the question of its validity is resolved, the trial court must act accordingly. Emery v. Emery, 404 P.2d 745, 749 (Wyo. 1965).
In the instant case, the October 1987 judgment purporting to terminate the father's parental rights is void. We have held that in termination proceedings a guardian ad litem must be appointed to represent the best interests of the children involved, and the failure to provide such representation deprives the trial court of jurisdiction to enter a termination order. P.R. v. Shannon, 726 P.2d 500 (Wyo. 1986); DB v. MM, 617 P.2d 1078 (Wyo. 1980). Here, counsel was appointed for the child in the original paternity action. In the subsequent termination proceeding, however, that same counsel was present but was acting in the capacity of deputy county attorney representing the State in its child support enforcement activities. After the chambers hearing regarding termination, said counsel wrote to the district judge stating in part: "As we discussed my involvement in this matter only involves representing the State to recover government aid which [the mother] has received." Thus, to the extent that the duly appointed counsel for the child was present, he was subject to divided loyalties, and the child did not receive the independent representation mandated by the decisions of this Court. In addition to the failure to provide a disinterested guardian ad litem, this termination proceeding was not otherwise accomplished in accordance with the procedures established in the termination statutes, Wyo. Stat. §§ 14-2-308 to -319 (1977), and particularly § 14-2-309 relating to the grounds for termination. No grounds for termination of the father's parental rights were mentioned, and there is no reason evident on the record why the child should be deprived of his father's financial support and paternal association.
The termination proceeding is not saved by the attempt to style it as a voluntary relinquishment of custody and consent to adoption in accordance with Wyo. Stat. § 1-22-109 (1977). At the hearing on the State's action, the State described the consent to adoption as a sham. We agree with that characterization. Termination of parental rights is accomplished in Wyoming either by a proceeding pursuant to the termination statutes or, in the case of an adoption proceeding, by the entry of a final decree of adoption subsequent to a validly executed relinquishment of custody and consent to adoption.[5]See Wyo. Stat. *1058 § 1-22-114 (1977) (entry of final decree of adoption ends parental rights of former parent).
In the termination order there is no reference to statutory authority for the purported termination, although reference is made in the order to a "Consent to Adoption and Relinquishment of Parental Rights." It is clear, however, that adoption was never contemplated in this case. As argued by the State in the proceeding below, the mother has no plans for marriage and hence no plans for an adoption of the child by a stepfather. We can only conclude that the attempt by these parents to posture this case as an adoption case is merely an artifice designed to detour attention from the fact that they bargained away the fundamental rights of the child in a proceeding in which the child's best interests, if they were considered, were given short shrift. The deficiencies in the termination proceeding cannot be rectified by attempting to bring it within the parameters of the adoption statutes.
In conclusion, we hold that the October 1987 judgment and order is void for lack of jurisdiction to terminate the parental rights of the father in the absence of adequate representation for the child. We further hold that the subsequent attack on that judgment by the State was in the nature of a W.R.C.P. 60(b)(4) proceeding for relief from a void judgment and that dismissal of that action was in error. As a consequence of our holding, the original judgment in the parentage action regains vitality, and the father has support obligations and visitation rights in accordance therewith.
Reversed.
NOTES
[1] In dismissing the State's action, the district court aptly described the case as a "can of worms."
[2] As gleaned from correspondence, comments, and allegations in the record and from reading between the lines, it appears that the father sought to be free of the support obligation and that the mother wished to receive public assistance without the annoying complication of having the father's support obligation entering into the equation. Thus, the stipulation served well the less-than-laudable purposes of the parents. The stipulation solved everyone's problems except, of course, the child's.
[3] According to the State's brief, the mother had continued to receive public assistance and had assigned her right to child support to the State.
[4] All court documents in this case were filed under the docket number originally assigned to the parentage action.
[5] Pursuant to Wyo. Stat. § 1-22-110 (1977), adoption may also be ordered without the consent of the parents or putative father upon grounds specified in that statute.