In the Matter of the Petition for ADOP-
TION OF MSVW, a minor child:
**LVW, Appellant (Petitioner),**

v.

**J and JR, Appellees (Respondents).**

No. C–98–2.

Supreme Court of Wyoming.

Oct. 21, 1998.

Cheryl Wadas, Cheyenne, for Appellees.

Stacey L. Best and Mark A. Bishop of Bishop Law Offices, Cheyenne, for Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant LVW (the natural father) appeals from the district court's order that granted a summary judgment in favor of Appellees J (the mother) and JR (the adoptive father) and denied the natural father's

---

* Chief Justice at time of conference.

motion for a summary judgment. The district court's order effectively upheld the adoptive father's adoption of MSVW (the child).

We affirm.

## ISSUES

The natural father presents the following issues for our review:

I. Did the trial court err in denying Appellant's Motion for Summary Judgment on the issue of defective service of process?

A. Is due diligence required for proper service when constructive service is used in adoption cases?

B. If a party fails to file an accurate affidavit as prescribed by W.R.C.P. 4(f) and Wyo. Stat. § 1–22–107, does this deprive the trial court of personal jurisdiction over Appellant or in the alternative void the service?

C. Even if due diligence had not been used, and the proper affidavit is not filed, is improper service of process cured by an entry of appearance?

II. Is a hearing statutorily mandated in all adoption proceedings and does failure to conduct a hearing render the order of Adoption void pursuant to W.R.C.P. 60(b)(4)?

A. Does execution of a consent to adoption deprive the Appellant of standing to appear at the hearing to revoke his consent?

## FACTS

The child was born on December 20, 1991. The mother and the natural father apparently lived together for awhile and parted in October 1993. The mother married the adoptive father in May 1994, and, shortly thereafter, the adoptive father petitioned to adopt the child. The mother consented to the adoption and averred that she was not sure about the identity of the child's biological father because she had sexual relations with three men at or near the time of the child's conception. The mother swore fur-

ther that she could not locate any of the men who were the child's potential biological fathers. The adoptive father subsequently effected service of process by publishing a notification of the adoption petition.

One of the natural father's friends informed him that a notification of the adoption petition had been published, and the natural father sent a lengthy letter to the clerk of the district court. Although the letter was somewhat confusing, the natural father did state that he waived his rights to the child. On November 3, 1994, the natural father filed an affidavit with the district court, consenting to the adoption of the child. A hearing to consider the adoptive father's petition was scheduled for December 19, 1994; however, the district court canceled the hearing because the natural father had consented to the adoption and the mother and the adoptive father had relocated to another state. The district court approved the adoptive father's adoption of the child on November 29, 1994.

On March 12, 1997, the natural father moved to set aside both his consent to the adoption and the adoption. The mother and the adoptive father responded to the natural father's motion. The parties filed opposing motions for a summary judgment, and the district court held a hearing on October 16, 1997, to consider the motions. The district court granted the mother and the adoptive father's motion for a summary judgment and denied the natural father's motion. The natural father subsequently perfected his appeal to the Wyoming Supreme Court.

### DISCUSSION

**A. Appealability of the Denial of the Motion for a Summary Judgment**

██ The natural father contends that the district court erred by denying his motion for a summary judgment. Before we consider the merits of this case, we must determine whether the case is properly before us. The general rule is that a denial of a motion for a summary judgment is not an appealable final order. *Lawson v. Garcia*, 912 P.2d 1136, 1138 (Wyo.1996). The purpose of this rule is to prevent piecemeal litigation. *State Farm Mutual Automobile*

*Insurance Company v. Peaton*, 168 Ariz. 184, 812 P.2d 1002, 1012 (Ariz.Ct.App.1990); *see also Knudson v. Hilzer*, 551 P.2d 680, 685 n. 3 (Wyo.1976). The Wyoming Supreme Court has, however, recognized at least one exception to the general rule. "[D]enial of a motion for summary judgment on the basis of qualified immunity is an appealable final order." *Lawson*, 912 P.2d at 1138.

Many courts recognize an additional exception to the general rule that the denial of a motion for a summary judgment is not subject to appeal. *See* R.F. Chase, Annotation, *Reviewability of Order Denying Motion for Summary Judgment*, 15 A.L.R.3d § 9[b] (1967).

> Where opposing motions for summary judgment have resulted in the court's denying one and granting the other, a number of cases have held that the party whose motion was denied may have this denial reviewed on the appeal from the order granting the other motion for summary judgment.

*Id.* at 925. This subject has also been addressed in a famous series of treatises: "[I]f the trial court's order denying summary judgment is coupled with the grant of summary judgment to the opponent, both decisions are immediately appealable." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2715 at 268 (3d ed.1998). The Colorado Supreme Court has ruled that an order denying a motion for a summary judgment is subject to appeal when the lower court also grants the opposing party's motion for a summary judgment and the lower court's order "effectively put[s] an end to the litigation without further ruling by the court." *Glennon Heights, Inc. v. Central Bank & Trust*, 658 P.2d 872, 875 (Colo.1983) (en banc). *See also Peaton*, 812 P.2d at 1012.

██ Allowing an appeal from a denial of a motion for a summary judgment in this limited situation is consistent with W.R.A.P. 1.05 and our cases that have applied that rule. W.R.A.P. 1.05 states in pertinent part:

> An appealable order is:

> (a) An order affecting a substantial right in an action, when such order, in

effect, determines the action and prevents a judgment; or

(b) An order affecting a substantial right made in a special proceeding; or

(c) An order made upon a summary application in an action after judgment . . .

In *Park County v. Cooney*, 845 P.2d 346, 349 (Wyo.1992), we quoted W.R.A.P. 1.05 and stated that "a final order from which appeal may be taken is one which 'determines the merits of the controversy and leaves nothing for future consideration.' *Public Serv. Comm'n v. Lower Valley Power and Light, Inc.*, 608 P.2d 660, 661 (Wyo.1980)." We conclude, therefore, that, when the district court grants one party's motion for a summary judgment and denies the opposing party's motion for a summary judgment and the district court's decision completely resolves the case, both the grant and the denial of the motions for a summary judgment are subject to appeal. If we were to refuse appeals in such cases, the unsuccessful party would be denied an opportunity to have his case reviewed by this Court.

The parties in this case filed opposing motions for a summary judgment. The district court disposed of the entire case in a single order by denying the natural father's motion and granting the mother and the adoptive father's motion. We hold that the natural father is entitled to have appellate review of the district court's order.

### B. Standard of Review

■ Our review of the district court's decision in this case is limited to issues of law. We do not accord special deference to the district court's decisions on matters of law. *Rist v. Taylor*, 955 P.2d 436, 437 (Wyo.1998); *Nylen v. Dayton*, 770 P.2d 1112, 1114 (Wyo. 1989).

### C. Personal Jurisdiction Over the Natural Father

The natural father maintains that the district court did not have personal jurisdiction over him in the original adoption proceeding because the adoptive father did not follow the proper procedures in serving him with process. The district court determined that the natural father waived his right to challenge the service of process when he appeared in the case without questioning the propriety of the service of process.

■ In order for a court to acquire personal jurisdiction over a defendant, the defendant must be properly served with process or he must voluntarily appear in the matter. *Pease Brothers, Inc. v. American Pipe & Supply Co.*, 522 P.2d 996, 1000 (Wyo. 1974). A judgment that has been entered without the court having jurisdiction over the defendant is null and void. *Id.* A defendant may waive his right to challenge a court's jurisdiction over him. W.R.C.P. 12(h)(1); *State ex rel. Sheehan v. District Court of Fourth Judicial District, in and for Johnson County*, 426 P.2d 431, 435 (Wyo.1967). "[T]he general rule [is] that it is necessary to question [the] jurisdiction of the court over the person at the earliest opportunity, failing in which the defense will be considered waived." *Pease Brothers, Inc.*, 522 P.2d at 1002. When a defendant voluntarily appears without questioning the court's personal jurisdiction over him, his appearance is the equivalent of proper service of process. *Id.*

■ In the instant case, the adoption petition and the mother's affidavit stated that the natural father's location was not known. The adoptive father attempted to serve the natural father with process by publishing a notice of the adoption proceeding. After his friend sent the published notice to him, the natural father filed a lengthy letter with the district court. In that letter, he stated that he waived his rights to the child. In contradiction to the adoption petition, the mother's affidavit, and the published notification, the natural father claimed that the mother was, in fact, aware of his location. The natural father argues that his letter should have been construed as being "an attempt to question the service of process by publication."

The natural father's letter stated that the mother knew where he was; however, it did not state that he contested the propriety of the service of process or the district court's jurisdiction over his person. The natural father subsequently filed a sworn affidavit consenting to the adoptive father's adoption

of the child. Again, the natural father's affidavit did not contain an objection to the district court's jurisdiction. To the contrary, the natural father expressly acquiesced to the district court's scheduling of the matter for a hearing. We conclude that the natural father voluntarily appeared in the adoption proceeding and waived his right to contest the validity of the service of process. The district court, therefore, had personal jurisdiction over him.

### D. Validity of the Final Adoption Decree

The natural father claims that the district court erred by denying his motion for relief from the judgment under W.R.C.P. 60(b)(4).[1] He argues that the adoption decree was void because the district court violated the adoption statutes when it failed to hold a hearing on the adoption. The district court determined that the natural father waived his right to attend a hearing when he consented to the adoption. The district court stated in its order that, once the natural father signed the consent, he "had no standing to attend the proceedings, so his due process rights were not violated and the absence of a hearing [did] not affect this [c]ourt's subject matter jurisdiction."

 In the usual case, granting a motion for relief under W.R.C.P. 60(b) is a matter within the district court's discretion, and this Court limits its review to whether the district court abused its discretion. *State ex rel. TRL by Avery v. RLP*, 772 P.2d 1054, 1057 (Wyo.1989). In cases such as this, however, where the judgment is challenged under W.R.C.P. 60(b)(4), the district court is not allowed to exercise its discretion. *Id.* The judgment is either valid or void, and, "once the question of its validity is resolved, the [district] court must act accordingly." *Id.*

 The party who is seeking to have an order vacated pursuant to W.R.C.P. 60(b)(4) has the burden of establishing his right to have that relief. *JW v. State ex rel. Laramie County Department of Public Assistance and Social Services (In re WM)*, 778

P.2d 1106, 1110 (Wyo.1989). A judgment is considered to be void only under very limited circumstances. *Id.* A party who is claiming that a judgment is void must show that the district court lacked jurisdiction over the parties or the subject matter of the controversy or that it acted in a manner that was inconsistent with due process. *Id.*

 Adoption was not known at common law; therefore, our statutes set out the exclusive procedures that have to be followed to accomplish an adoption. *PR v. Shannon (Parental Rights to TR)*, 777 P.2d 1106, 1110 (Wyo.1989). Adoption statutes are subject to strict construction, and adoption proceedings must be conducted in substantial compliance with the relevant statutes. *Id.* The natural father maintains that the adoption statutes mandated that a hearing be held and that he was entitled to attend the hearing. He suggests that, if he had attended a hearing, he would have revoked his consent to the adoption on the basis of fraud and duress.

 Wyo. Stat. Ann. § 1–22–106 (1997) directs the district court to set an adoption petition for hearing when it is filed. The only persons who may attend the hearing, however, are "court officials, parties to the proceeding, counsel, nonconsenting parents, the nonconsenting putative father of the child and witnesses." Wyo. Stat. Ann. § 1–22–105 (1997). By specifically stating that nonconsenting parents and nonconsenting putative fathers are allowed to attend the adoption hearing, but not including consenting parents or consenting putative fathers on the list of persons who are allowed to attend the hearing, the legislature clearly permitted only those persons who had a continuing stake in the proceedings to appear. Consistent with § 1–22–105, this Court has determined that, once the issue of consent has been resolved, the natural father is "a stranger to the adoption proceedings." *PAA v. Doe (Adoption of RHA)*, 702 P.2d 1259, 1264 (Wyo.1985). The district court was, therefore, correct when it determined that, because the natural father had consented to the adoption, he did not

---

1. W.R.C.P. 60(b)(4) states: "On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void."

have standing to request or attend a hearing on the merits of the adoption.

 Throughout his argument, the natural father insists that he had the right to attend the hearing so that he could have the opportunity to revoke his consent on the basis of fraud and duress. The fatal error in the natural father's argument is that he did not indicate, in any way, to the district court that he intended to revoke his consent until March 12, 1997, when he moved to set aside both his consent to the adoption and the adoption. The natural father filed his motion more than two years after the final adoption decree was entered. If the natural father had made his claim prior to the entry of the final adoption decree, he would have been entitled to attend a hearing and contest the validity of his consent. WYO. STAT. ANN. § 1–22–109(d) (1997).[2] Additionally, W.R.C.P.

60(b) gave the natural father up to one year after the adoption decree had been entered to challenge the validity of his consent on the ground that it had been obtained by fraud. The natural father's attempt to revoke his consent and vacate the final adoption decree more than two years after the district court entered the decree was untimely. The district court properly determined that the natural father was not entitled to be relieved from the adoption decree.

Affirmed.

---

**2.** Section 1–22–109(d) states in pertinent part: "Consent to adoption and the relinquishment of a child for adoption are irrevocable unless obtained by fraud or duress."