# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 103

OCTOBER TERM, A.D. 2016

October 27, 2016

IN THE MATTER OF THE
GUARDIANSHIP OF MKH, Minor
Child.

BRENDA CLARK,

Appellant
(Respondent),

v.                                                      S-16-0062

AARON HUFFER,

Appellee
(Petitioner).

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*
    Rhonda S. Woodard of Wolf, Tiedeken & Woodard, PC; and Susan Feinman, Law
    Office of Susan L Feinman, Cheyenne, WY.  Argument by Ms. Woodard.

*Representing Appellee:*
    Bernard Q. Phelan, Cheyenne, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Brenda Clark, the grandmother and court-appointed guardian of MKH, appeals a district court decision vacating her 2005 and 2006 guardianship appointments.  The district court declared the guardianship orders void for lack of subject matter jurisdiction because the original order appointed Ms. Clark guardian of MKH before the child was born.  We reverse.

## ISSUES

[¶2]    Ms. Clark states the issues on appeal as follows:

> 1.    In March 2005, did the district court have subject matter jurisdiction to enter the *Order Appointing Guardian* for an unborn child who was due to be born within a few weeks?
>
> 2.    If the district court did not have subject matter jurisdiction when the *Order Appointing Guardian* was entered, is the 2006 *Order Extending Guardianship*, which was entered after the birth of MKH, in effect?

## FACTS

[¶3]    On February 23, 2005, Brenda Clark filed a Petition for Appointment of Guardian in the district court for Laramie County.  The petition requested that the court appoint Ms. Clark to be the guardian of her unborn granddaughter "from the time the proposed ward is born until further order of the Court."  In support of the request, the petition recited, in part:

> 1.    The proposed ward, [Baby H], will be born sometime during the next six weeks and will be a minor under the laws of this State.
>
> 2.    The proposed ward cannot reside with his or her natural mother, Stephanie L. Urbigkit, as she is incarcerated at Laramie County Detention Center, Cheyenne, Wyoming. Stephanie L. Urbigkit's consent to the appointment of the Petitioner as guardian of the proposed ward will be filed herein.
>
> 3.    The proposed ward cannot reside with his or her natural father, Aaron J. Huffer, [home address omitted], as he is unable and unwilling to assume the responsibility of caring for a newborn child.  Aaron J. Huffer's consent to the

1

appointment of the Petitioner as guardian of the proposed ward will be filed herein.

4. The Petitioner is Stephanie L. Urbigkit's mother and will be the maternal grandmother of the proposed ward. The Petitioner resides at [street address omitted], Cheyenne, Wyoming.

[¶4]	On the same date the guardianship petition was filed, Aaron J. Huffer (hereinafter Father) and Stephanie L. Urbigkit (hereinafter Mother) each filed a Consent to Appointment of Guardian. Father's consent stated, "I hereby consent to the appointment of the baby's maternal grandmother, Brenda K. Clark, as guardian of the person of the proposed ward from the time he or she is born until further order of the Court." Mother's consent similarly stated, "I hereby consent to the appointment of my mother, Brenda K. Clark, as guardian of the person of the proposed ward from the time he or she is born until further order of the Court."

[¶5]	On March 2, 2005, the district court, the Hon. Dan Spangler presiding, entered an Order Appointing Guardian. The order recited the following findings:

1. [Baby H] will be born to Stephanie L. Urbigkit sometime during the next six weeks.
2. Stephanie L. Urbigkit is a resident of Laramie County, Wyoming and, at the time of his or her birth, [Baby H] will also be a resident of Laramie County, Wyoming.
3. At the time of his or her birth, [Baby H] will be a minor under the laws of this State.
4. [Baby H] has no legally appointed guardian or conservator.
5. A guardian of the person should be appointed for [Baby H].
6. [Baby H's] natural mother, Stephanie L. Urbigkit, is currently incarcerated at the Laramie County Detention Center, Cheyenne, Wyoming. She has consented to having Brenda K. Clark, the Petitioner herein, appointed as guardian of the person of [Baby H] from the time [of] his or her birth. Said consent has been filed herein.
7. [Baby H's] natural father, Aaron J. Huffer, has also consented to having Brenda K. Clark, the Petitioner herein, appointed as guardian of the person of [Baby H]. Said consent has been filed herein.
8. Brenda K. Clark is a fit and proper person to serve as guardian of the person of [Baby H].

2

[¶6]    Following the recitation of findings relating to the need for a guardian, the Order Appointing Guardian directed that: "Brenda K. Clark be, and she hereby is, appointed guardian of the person of [Baby H]." On the same day the Order Appointing Guardian was entered, the district court also entered a supplemental order detailing the guardian's reporting obligations and the types of duties assumed by the guardian with her appointment.

[¶7]    On March 21, 2005, Baby H was born and given the name MKH. On June 6, 2005, Father's aunt, Darlene Trejo-Caine, filed a motion to set aside the order appointing Ms. Clark as guardian of MKH. Ms. Trejo-Caine alleged that she had been appointed as temporary guardian of MKH's siblings and that she was the more suitable person to be appointed as MKH's guardian. Ms. Clark responded to the motion, stating, in part:

> 6.    On March 16, 2004, Darlene Trejo-Cain was appointed as temporary guardianship (sic) of the ward's siblings. She allowed her appointments to expire and moved the ward's siblings into hiding. She moved the Court for extensions of the guardianships of the ward's siblings only after Brenda K. Clark petitioned the Court for guardianship of the ward's siblings after Darlene Trejo-Cain's temporary guardianship of them had expired and she had moved them into hiding. * * *
> 7.    * * * At this time, motions are pending in the guardianship matters of the ward's siblings to have Brenda K. Clark appointed as guardian of the ward's siblings and the children's parents have filed their consents to said appointments therein.

[¶8]    On August 23, 2005, in response to these motions, the district court, the Hon. Peter G. Arnold presiding, appointed a guardian ad litem who served as guardian ad litem for all three children. On February 21, 2006, the guardian ad litem submitted a report to the court recommending that Ms. Clark be appointed as MKH's permanent guardian, and that Ms. Trejo-Cain be appointed as permanent guardian of MKH's two siblings. On May 3, 2006, the district court, the Hon. Peter G. Arnold still presiding, entered an Order Extending Guardianship, which directed that "[t]he appointment of Brenda K. Clark as guardian of the person of [MKH] shall be extended until further order of the Court or the need for the appointment no longer exists."

[¶9]    The 2006 Order Extending Guardianship was a comprehensive order, detailing over the course of five pages the district court's findings concerning the need for the guardianship of MKH and the guardian's obligations and powers. The order summarized the need for the guardianship in its first two findings:

3

1. [MKH] is a resident of Laramie County, Wyoming and is a minor under the laws of this State.

2. Neither of the ward's natural parents is able to care for her due to their use of illegal drugs and their related illegal activities.

[¶10] The record contains no record of any further action on the guardianship of MKH until late 2012. On November 28, 2012, Father filed a Petition to Terminate Guardianship. As grounds for the petition, Father alleged that his circumstances had changed, he was fit to have custody of MKH, and there was no longer a need for the guardianship of MKH. Ms. Clark opposed the petition, but before any ruling could be made on the petition, the court, still the Hon. Peter G. Arnold presiding, ordered the withdrawal of Mr. Huffer's attorney on grounds he had an apparent conflict of interest in representing Mr. Huffer. The order removing Mr. Huffer's attorney was entered on April 3, 2013, and the court also vacated the hearing that had been set on the petition to allow Mr. Huffer time to retain new counsel.

[¶11] The record again reflects no action on the guardianship of MKH until 2014. On August 14, 2014, Father filed a Petition for an Order Vacating "Order Appointing Guardian" as Void *Ab Initio*; or, in the Alternative, that the Guardianship Be Terminated. On September 4, 2014, Ms. Clark filed her response to the petition and requested that the petition be denied. Mother also filed a response to the petition and requested that the petition be denied or in the alternative, if the court found grounds to terminate the petition, that she be awarded custody of MKH.

[¶12] On June 11, 2015, several months after filing his petition to vacate the 2005 order, Father filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. By his motion, Father argued the district court did not have jurisdiction to enter its 2005 order appointing Ms. Clark as MKH's guardian because MKH was not yet born and he requested that the 2005 order be declared void and that MKH be returned to her natural parents. Ms. Clark opposed the motion, arguing that the court had subject matter jurisdiction when it entered the 2005 order and, alternatively, that the 2006 order ratified the 2005 order.

[¶13] On January 5, 2016, the district court, the Hon. Catherine R. Rogers presiding, entered an order granting Father's motion to dismiss for lack of jurisdiction. The court reasoned:

Father is correct in his assertion that the Court lacked subject matter jurisdiction to enter the 2005 ORDER ESTABLISHING GUARDIAN. Neither "ward" nor "minor", as those terms are defined in Wyo. Stat. Ann. § 3-1-101, explicitly applies to unborn children. "Ward" is simply an

4

individual for whom a guardian or conservator has been appointed. Wyo. Stat. Ann. § 3-1-101(xv). "Minor" means an unemancipated individual under the age of majority, that is, eighteen (18) years old. Wyo. Stat. Ann. 3-1-101(xvi). It is clear that this definition is meant to distinguish between adults and children, not to determine when a fetus becomes an individual.

* * * Because Title 3 did not provide statutory authority for the Court to enter the 2005 ORDER, the Court lacked subject matter jurisdiction. The 2005 ORDER is void and has no effect for any purpose.

* * * *

The Guardian asserts that if the 2005 ORDER is valid, then the 2006 Order ratified the original 2005 ORDER. In the alternative, the Guardian argues that if the 2005 ORDER is void, then the 2006 ORDER serves as the initial ORDER ESTABLISHING GUARDIANSHIP.

Although the Guardian provides a definition of ratification, she fails to cite any authority to justify her argument that the 2006 ORDER ratified the 2005 ORDER. In fact, the concept of ratification is inapplicable to this situation because "ratification is an agency concept that 'retroactively creates the effects of actual authority.'" *Velasquez v. Chamberlain*, 209 P.3d 888, 894 (Wyo. 2009). The present case does not concern a question of agency. Rather, the issue before the Court is whether the Court had subject matter jurisdiction to enter the 2005 ORDER.

* * * *

The Guardian's ratification argument fails twofold. First, this case does not concern agency. When the Court entered the 2005 ORDER, it did not act as an agent on behalf of a principal. None of the parties to the action acted for the benefit of a principal agent and, therefore, agency principles do not apply. Second, the 2006 ORDER cannot ratify the 2005 ORDER because the Court lacked subject matter jurisdiction to establish the guardianship in 2005. Because it is not possible to ratify an act that could not have been legally accomplished in the first place, the 2006 ORDER could not have ratified the 2005 ORDER. As a result, the concept of ratification does not apply to this case.

5

[¶14]  On January 28, 2016, Ms. Clark timely filed her Notice of Appeal to this Court.[1]

## STANDARD OF REVIEW

[¶15]  The record does not indicate why Father's 2015 challenge to the 2005 Order Appointing Guardian came in the form of a Rule 12(b)(1) motion to dismiss.  While subject matter jurisdiction may be challenged at any point, once a final order has been entered, the challenge is generally by appeal or by the filing of a Rule 60(b)(4) motion. *See In the Interest of MFB*, 860 P.2d 1140, 1146 (Wyo. 1993) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil*, § 1350 at 200–05 (1990)) ("A challenge to subject matter jurisdiction may be asserted at any time by any interested party before final judgment, or in a motion for relief from judgment under W.R.C.P. 60(b), or on appeal after being overruled below.").  Although Father cast his motion as a Rule 12(b)(1) motion and the district court ruled on the motion as such, we view the court's order as more akin to a Rule 60(b)(4) order setting aside a judgment as void for lack of jurisdiction.  We will therefore review the order according to our standard of review for a Rule 60(b)(4) order:

> "The granting or denying of relief pursuant to W.R.C.P. 60(b) is a matter within the discretion of the trial court, and our review is limited to the question of whether there has been an abuse of discretion." *State ex rel. TRL by Avery v. RLP*, 772 P.2d 1054, 1057 (Wyo.1989). When a judgment is attacked pursuant to Rule 60(b)(4), however, there is no question of discretion in granting or denying relief—either the judgment is void, or it is valid. *Id*. Once that determination is made, the trial court must act accordingly. *Id*. "A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2nd* § 2862, at 326–29 (1995) (footnotes omitted); *see also*, *In Interest of WM*, 778 P.2d 1106, 1110 (Wyo.1989).

*Linch v. Linch*, 2015 WY 141, ¶ 10, 361 P.3d 308, 311 (Wyo. 2015) (quoting *Teton Builders v. Jacobsen Constr. Co.*, 2004 WY 147, ¶ 6, 100 P.3d 1260, 1263 (Wyo. 2004)).

[¶16]  We are also guided by our standard of review for guardianship matters:

---

[1] The record indicates that at the time the district court heard argument on Father's Rule 12(b)(1) motion, a separate action to terminate Father's parental rights to MKH, filed by Ms. Clark, was pending before the district court in Laramie County.  We do not know the status of that proceeding.

6

> We presume the district court's findings of fact are correct and will not set them aside unless the findings are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. Additionally, we review a district court's conclusions of law *de novo*.... Construction of the guardianship statutes involves a question of law which we review *de novo*.

*In re Guardianship of Lankford*, 2013 WY 65, ¶ 14, 301 P.3d 1092, 1098 (Wyo. 2013) (quoting *In re DMW*, 2009 WY 106, ¶ 10, 214 P.3d 996, 998 (Wyo. 2009)).

## DISCUSSION

[¶17] The district court held that the 2005 guardianship order was void for lack of subject matter jurisdiction because the order appointed Ms. Clark guardian of MKH (then Baby H) before her birth. We have some doubt as to whether the district court intended with its 2005 order to impose a guardianship over Baby H before her birth. [2] The order did, however, make the guardianship of Baby H effective immediately, on a date that clearly preceded the child's birth, and it contained no limitation on the scope of the guardianship as it pertained to the child's unborn status. We will therefore treat the 2005 order as if it appointed a guardian for an unborn child.

[¶18] We will first address the question whether Wyoming's guardianship statutes authorize a court to appoint a guardian for an unborn child. We will then turn to the question whether the district court is without subject matter jurisdiction to act on a petition for appointment of a guardian for a child that is filed prior to that child's birth.

### A.   Guardianship over Unborn Child

[¶19] "Guardianship matters are controlled and governed exclusively by statute." *In re Guardianship of MEO*, 2006 WY 87, ¶ 18, 138 P.3d 1145, 1150 (Wyo. 2006) (citing *State ex rel. Klopotek v. Dist. Court*, 621 P.2d 223, 227 (Wyo. 1980)). The question whether a guardian may be appointed for an unborn child must therefore be answered by

---

[2] Our doubts concerning the intended scope of the 2005 order stem from the circumstances surrounding the guardianship appointment. First, Ms. Clark's guardianship petition did not request an appointment over the unborn child. The petition requested that her appointment take effect upon the child's birth. Second, the court's 2005 supplemental order, which detailed the guardian's responsibilities, seemed to contemplate a guardianship that would begin after the child's birth. The 2005 supplemental order made no reference to obligations before the child's birth, and the duties of the guardian listed in the supplemental order were preceded by the statement: "In addition to assuming custody of the ward, a guardian shall determine and facilitate the least restrictive and most appropriate and available residence for the ward." Obviously, the guardian would not be taking custody of the child before her birth. It seems apparent that the court's intent with the 2005 appointment was not to ensure a guardianship over the unborn child but rather to ensure that a guardian would be in place upon the child's birth.

7

resort to Wyoming's guardianship statutes, which we interpret according to our established rules of interpretation:

> In any question of statutory interpretation, our primary objective is to give effect to the legislature's intent. *L & L Enters. v. Arellano (In re Arellano)*, 2015 WY 21, ¶ 13, 344 P.3d 249, 252 (Wyo.2015). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale*, ¶ 12, 344 P.3d at 765 (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo.2002)). In light of this objective, we have said:

>> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

> *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo.2014) (citing *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 36–37, 319 P.3d 116, 125–26 (Wyo.2014)).

*Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 2015 WY 127, ¶ 22, 357 P.3d 1118, 1126 (Wyo. 2015).

[¶20] Pursuant to Wyoming's guardianship statutes, a petition for appointment of a guardian may be filed if the proposed ward is a minor, an incompetent person, or a mentally incompetent person. Wyo. Stat. Ann. § 3-2-101(a)(ii) (LexisNexis 2015). The question here is whether an unborn child is a "minor." Based on the statutory definition of the term, we conclude the answer to that question is no.

[¶21] The guardianship statutes define the term "minor" to mean "an unemancipated individual under the age of majority as defined by W.S. 14-1-101(a)." Wyo. Stat. Ann. § 3-1-101(a)(xvi) (LexisNexis 2015). Wyo. Stat. Ann. § 14-1-101(a), in turn, defines the age of majority in the following terms:

> Upon becoming eighteen (18) years of age, an individual reaches the age of majority and as an adult acquires all rights and responsibilities granted or imposed by statute or common law, except as otherwise provided by law.

Wyo. Stat. Ann. § 14-1-101(a) (LexisNexis 2015).

[¶22] We agree with the district court's reasoning that this definition is meant to distinguish between adults and children and has no meaning with respect to an unborn child. This interpretation is further borne out by the remainder of Wyo. Stat. Ann. § 14-1-101, which directs itself to health care decisions a minor may make for him or herself. *See* Wyo. Stat. Ann. § 14-1-101(b) ("A minor may consent to health care treatment to the same extent as if he were an adult when any one (1) or more of the following circumstances apply * * *."). The term "minor" is used to connote limitations on an individual's capacity to act independently and without adult supervision, and the term's statutory definition reflects no intention by the legislature to have the term include an unborn child.

[¶23] This conclusion is further confirmed when we look to the guardianship statutes as a whole. There are no doubt issues that could arise between the guardian of an unborn child and the mother carrying that unborn child that are unique to that circumstance, such as medical decisions that may affect a mother and her unborn child differently. The guardianship statutes, however, provide no direction on such matters. *See, e.g.,* Wyo. Stat. Ann. § 3-2-201 (LexisNexis 2015) (setting forth powers and duties of guardian). Reading the statutes as a whole, then, we are again unable to find any legislative intent to include an unborn child in the definition of "minor," or to otherwise allow for the appointment of a guardian for an unborn child.

[¶24] Because the guardianship statutes do not authorize the appointment of a guardian for an unborn child, the district court erred in appointing a guardian for MKH before her birth. As we discuss next, however, it does not necessarily follow that the district court was without jurisdiction to act in this matter or that the 2005 order was void for lack of subject matter jurisdiction.

## B.    Subject Matter Jurisdiction

[¶25] We have observed the competing policies implicated when a challenge to a final order is not raised until long after the order's entry and the time for an appeal has passed:

The legal principles invoked to determine the issues raised in this case are summarized in *Kansas City Southern Railway Company v. Great Lakes Carbon Corporation*, 624 F.2d 822 (8th Cir.1980), cert. denied 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980). The essence of that summary is that a judgment is void only when there has been a plain usurpation of power, or the extension of jurisdiction beyond the scope of the court's authority. That is to be distinguished from an error in the exercise of the jurisdiction of the court, which must be addressed by appeal rather than a motion under Rule 60(b). The competing policies are a disciplined observance of jurisdictional limits coupled with the need for finality of judgments. If the court concludes that the challenge is simply to an erroneous interpretation of the statutory grant of jurisdiction, then, in favor of the policy of certainty and finality, the judgment becomes final unless appealed.

*Linch*, ¶ 18, 361 P.3d at 314 (quoting *Jubie v. Dahlke (In re Estate of Dahlke )*, 2014 WY 29, ¶ 46, 319 P.3d 116, 127 (Wyo. 2014)).

[¶26]   We are thus concerned in this case with whether the district court acted outside its jurisdictional authority in entering its 2005 order or merely erred in its exercise of its lawful jurisdiction.  If it is the former, we must declare the order void.  If it is the latter, the order will stand.

[¶27]   Subject matter jurisdiction refers to a court's "power to hear and determine the matter in controversy between the parties."  *Linch*, ¶ 17, 361 P.3d at 313 (quoting *Brush v. Davis*, 2013 WY 161, ¶ 9, 315 P.3d 648, 651 (Wyo. 2013)).  "A court has subject matter jurisdiction when it has the authority to consider and decide 'cases of the general class of which the proceeding belongs.'"  *Id.*, ¶ 17, 361 P.3d at 313-14 (quoting *Brush*, ¶ 9, 315 P.3d at 651).

[¶28]   Wyoming district courts "are endowed with broad subject-matter jurisdiction" and are "courts of superior and general jurisdiction."  *Christiansen v. Christiansen*, 2011 WY 90, ¶ 5, 253 P.3d 153, 155 (Wyo. 2011).  With respect to guardianships, in particular, a district court may appoint a guardian as follows:

(a)  The court may appoint a guardian if the allegations of the petition as to the status of the proposed ward and the necessity for the appointment of a guardian are proved by a preponderance of the evidence.

10

(b) The order appointing a guardian shall state the findings of the court, including:

(i) The reasons why the ward is in need of a guardian;

(ii) The appointment of the guardian;

(iii) The duration of the appointment for a specified term or permanent, subject to W.S. 3-3-1101;

(iv) The limited or plenary duties of the guardian.

Wyo. Stat. Ann. § 3-2-104 (LexisNexis 2015).

[¶29] There is no question that the district court could have appointed a guardian for MKH to take effect upon the child's birth. Ms. Clark's petition established the need for the appointment, and upon her birth, MKH's status was as a minor. The court's error in entering its 2005 order was its failure to delay the effective date of the appointment. We have held that a Rule 60(b)(4) motion to set aside a judgment as void for lack of subject matter jurisdiction will be granted in only:

> the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction. *Nemaizer v. Baker*, 793 F.2d 58, 65 (C.A.2 1986); see, e.g., [*U.S. v.*] *Boch Oldsmobile*[*, Inc.,*], *supra* [909 F.2d 657], at 661–662 [ (C.A.1 1990) ] ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and ... only rare instances of a clear usurpation of power will render a judgment void" (brackets and internal quotation marks omitted)).

*Linch*, ¶ 19, 361 P.3d at 314 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271, 130 S.Ct. 1367, 1377, 176 L.Ed.2d 158 (2010)).

[¶30] An error in the effective date of a guardianship appointment does not rise to the level of a jurisdictional defect. The district court had jurisdiction to act on the 2005 petition and simply erred in its exercise of that jurisdiction.

[¶31] Finally, we also agree with Ms. Clark that the 2006 Order Extending Guardianship remains a valid order. This is not a question of the 2006 order ratifying the 2005 order. The 2006 order was effectively a new appointment of Ms. Clark as the guardian of MKH. In entering the 2006 order, the district court made new findings of the need for the

11

guardianship and outlined the guardian's obligations in even more specific detail than did the original 2005 order. The 2006 order thus remains in effect.

## CONCLUSION

[¶32] Under Wyoming's guardianship statutes, an unborn child is not included in the definition of a "minor," and therefore a court may not appoint a guardian for an unborn child. The error in the original 2005 Order Appointing Guardian was, however, an error only in the effective date of the appointment and did not rise to the level of a jurisdictional defect. The decision of the district court declaring the 2005 and 2006 orders void is reversed.