FOX, Justice.
[¶1] Essex Holding, LLC (Essex) and Basic Properties, Inc. (Basic) each own lots in a shopping center subject to restrictive covenants. Basic requested Essex's consent to amend the covenants to allow Basic to develop one of its lots. Essex refused, litigation ensued, and a jury awarded Basic $200,000 in damages. The district court also awarded attorney fees and costs to Basic. Essex filed post-trial motions which the district court denied, and Essex filed its appeal within 30 days of that denial. Essex challenges the verdict and damages award, along with several *713 of the district court's rulings and orders. We affirm.
ISSUES
[¶2] We restate and reorder the issues Essex has raised:
1. Did Essex timely file its Notice of Appeal?
2. Did Basic have standing to assert its counterclaim?
3. Did the district court err when it submitted Basic's counterclaim for breach of contract to the jury?
4. Did jury instructions which rejected Essex's theory regarding the void 1993 Amendment constitute plain error?
5. Did cumulative error result in an excess verdict or a verdict contrary to law?
6. Did the district court properly grant Basic's motion for judgment as a matter of law on Essex's anticipatory repudiation claim?
7. Did the district court err in its award of attorney fees and costs to Basic?
8. Did the district court properly deny Essex's W.R.C.P. 60(b) motion?
FACTS
[¶3] Essex and Basic each own parcels of land in the Flaming Gorge Shopping Center in Green River, Wyoming, subject to restrictive covenants (the ECRs) recorded by the developer in 1975. The ECRs grant each parcel owner an access easement for the common areas, largely consisting of ingress and egress to the parking lot. They may be modified with the "written consent of all record owners of Parcels I, II, and III," which consent "shall not be unreasonably withheld."
[¶4] The developer attempted to modify the ECRs in 1993, before Essex and Basic acquired their parcels, in conjunction with subdividing Parcel II into Parcel II-A and Parcel II-B. The developer recorded a Modification and Amendment of Easements with Covenants and Restrictions Affecting Land on December 14, 1993 (1993 Amendment) for this purpose.
[¶5] Essex acquired Parcel I in 1999, and Basic acquired Parcel II-B in 1998, Parcel II-A in 1999, and Parcel III in 2003. In 2008, Basic enlarged and renamed Parcel II-B as Parcel II-D. In 2012, Basic sold Parcel II-A to David and Lynda Laughlin (Laughlins).
[¶6] On November 17, 2011, Basic contracted to sell Parcel II-D to O'Reilly Automotive Store, Inc. (O'Reilly) for the construction of an auto parts store. Basic and O'Reilly believed that the 1993 Amendment permitted construction of a building along the eastern boundary of Parcel II-D. In the spring of 2012, Basic and O'Reilly realized that there were access problems along the eastern boundary and wished to move the parcel's building area to the southern boundary. The change would require further amendment of the ECRs.
[¶7] Around April 2012, Basic's president, Don Johnson, contacted Essex's managing member, Mark Langfan, to discuss amending the ECRs. On May 8, 2012, Basic's attorney expressly requested Essex's consent to amend the ECRs and provided a proposed written amendment to the 1993 Amendment.
[¶8] After receiving no response, Basic's attorney made several phone calls and sent several follow-up emails to Essex on June 14, 19, and 27, 2012, and July 12, 2012, providing O'Reilly's site plan, additional copies of the ECRs, prior amendments, and the proposed written amendment. Essex did not respond to any email and did not provide any substantive comments about the proposed development during any of the telephone calls.
[¶9] On July 2, 2012, O'Reilly's realtor emailed photographs of the proposed development to Essex and requested Essex's consent to the plan. Essex provided the photographs to its tenant and property manager, Ace Hardware, requesting its feedback. Ace Hardware informed Essex that the proposed O'Reilly building would benefit its business by increasing traffic to the shopping center.
[¶10] On August 13, 2012, Mr. Johnson emailed Essex requesting a time to discuss the amendment. Essex replied two days later, stating: "You only sent us some of the documents. Where are all of the easement *714 documents for the property?" Basic's attorney re-sent copies of the ECRs and all amendments to Essex. Mr. Johnson explained that the proposed development would have little impact on Essex's parcel and, instead, would increase traffic and the value of the parties' respective properties. Mr. Johnson offered to pay Mr. Langfan's expenses to come to Wyoming to view the site.[1]
[¶11] On or about August 24, 2012, however, Essex discovered that the 1993 Amendment was missing a required signature and could be invalid. Thus, instead of responding to Mr. Johnson's email, Essex informed Basic's attorney of the missing signature. Basic's attorney acknowledged that the 1993 Amendment did not contain a required signature, but continued to request Essex's consent to amend the covenants:
As I mentioned in my prior email, I had thought that the putative 1993 Amendment (that I first sent to you on June 19, 2012) was valid, but it appears that perhaps it is not, because no representative from Parcel I signed it.
Please let us know under what conditions, if any, Essex Holding is willing to sign the proposed amendment .
(Emphasis added.)
[¶12] On September 6, 2012, having received no substantive response to Basic's request, Mr. Johnson emailed Essex asking for help in understanding Essex's reluctance to approve the amendment. Mr. Langfan replied, "I was given false information to begin with that I was obligated to the building area. Secondly, from the plan alone, the ingress is impeded by what would parking stalls on and out [sic] that I believe is dangerous." Essex retained an attorney, considered itself in "litigation mode," and remained unwilling to negotiate or sign any proposed amendment.
[¶13] On September 14, 2012, O'Reilly's realtor informed Essex by email that a new proposed development option would be forthcoming. Essex responded the same day, stating:
The issue is there is no right to build to begin with. I was first incorrectly told there was a right, and was sent a false graphic depicting the false statement. Then, I had to do my own research which proved there wasn't any such right. Then, I discovered there was a false document recorded against my title. That document must be removed immediately.
The "false document" Essex referred to was the 1993 Amendment.
[¶14] Following this exchange, the attorneys for Basic and Essex continued to correspond. Basic's attorney renewed Basic's request for consent, reminding Essex's attorney that the ECRs prohibited the unreasonable withholding of consent. Basic's attorney urged Essex's attorney to "clean up the record and make clear that building is allowed on this particular corner that is furthest from Essex Holding's property." Essex's attorney did not respond to the consent issue. Instead, he claimed that Basic breached the ECRs and asked Basic to remove the 1993 Amendment from the record. Basic's attorney countered that Essex was in breach of the ECRs and not acting in good faith, and documented Basic's attempts to secure Essex's consent to an ECR amendment:
I called Mr. Langfan multiple times in May and June but could not get a response from him one way or the other. I sent follow up emails to Langfan on May 14, June 14, June 19, June 27, July 12 and August 1, 2012. As you are aware, Essex Holding initially took no position on the proposed new amendment and then ultimately refused to consent to any amendment that would allow construction on Parcel II-D. During a separate email exchange between Don Johnson and Mark Langfan on September 6, 2012, Langfan expressed concerns about ingress and egress.
Essex Holding has never given any coherent reason for refusing to sign the proposed amendment. Its claim that ingress and egress would be adversely affected is not well founded as O'Reilly Auto Parts *715 would be adding an additional ingress and egress point, thus improving not degrading access to the shopping center.
This letter provides notice that Essex Holding is in violation of Section 8(a) of the ECRs for its unreasonable withholding of consent to the proposed amendment to the ECRs that would allow construction of an O'Reilly Auto Parts store on Parcel II-D.
Essex's counsel responded in writing by simply stating:
I have received your letter dated November 1, 2012, in which you make several assertions that Essex Holding, LLC rejects and which we will not take the time to respond to at this point. I will, however, reiterate that Essex Holding, LLC has valid and legitimate business reasons for withholding consent to modify the Easements with Covenants and Restrictions Affecting Land [ ].
[¶15] On October 31, 2012, Mr. Johnson informed Mr. Langfan that O'Reilly had extended the contract through the end of December and was willing to adjust the site plan to address any safety concerns with the ingress and egress points. Mr. Johnson offered to pay Mr. Langfan for his time to resolve the issue. Mr. Langfan responded by directing Mr. Johnson to Essex's attorney.
[¶16] On December 14, 2012, Basic made a final attempt to secure Essex's consent. Basic warned Essex's attorney that Basic would likely lose the O'Reilly sale if Essex refused to sign a proposed amendment. Essex did not respond. O'Reilly terminated its contract with Basic on December 31, 2012.
[¶17] In the spring of 2013, Overland Development Corporation (Overland) contacted Essex about its desire to purchase Parcel II-D to develop and lease to O'Reilly. Essex refused to consent to any proposed development, and Overland terminated its purchase contract with Basic.
[¶18] On October 15, 2013, Essex filed suit in district court against Basic and the Laughlins. Essex sought to quiet title in Essex's easement in the common parking area, a declaratory judgment invalidating the 1993 Amendment, and damages for Basic's alleged anticipatory repudiation of the ECRs. Basic counterclaimed, asserting breach of contract and tortious interference with the O'Reilly and Overland sales contracts. Basic also sought declaratory and injunctive relief for Essex's unreasonable withholding of consent to modify the ECRs.
[¶19] The parties stipulated to entry of an order that declared the 1993 Amendment void ab initio . The district court then dismissed the Laughlins from the litigation, and dismissed Essex's claims for declaratory judgment and quiet title, leaving only its anticipatory repudiation claim against Basic. Essex moved for summary judgment on Basic's counterclaims. Basic filed a cross-motion for summary judgment on Essex's anticipatory repudiation claim. After full briefing and a hearing, the district court granted Essex's motion for summary judgment on Basic's tortious interference claim, but otherwise denied the parties' motions.
[¶20] Before trial, Essex filed a motion in limine to exclude Basic's evidence of damages and Basic's land valuation expert testimony. Essex claimed that monetary damages were not permitted because (1) the ECRs are equitable servitudes, not real covenants; (2) the terms of the ECRs did not permit monetary damages; and (3) the damages sought were unforeseeable consequential damages. Essex also asserted that Basic, as the sole owner of Parcel III, could not claim damages pertaining to Parcel II because the Laughlins did not join in the counterclaim as Essex alleged the ECRs required. In its Order After Pretrial Conference, the district court denied Essex's motion and determined that the ECRs permitted monetary damages if necessary for "full and adequate relief"; the damages were foreseeable; and Basic, as the sole owner of Parcel III, had standing to bring its counterclaims.
[¶21] At the close of the five-day jury trial, Essex moved for judgment as a matter of law, arguing that Basic lacked standing. The court denied the motion. Basic moved for judgment as a matter of law on Essex's claim for anticipatory repudiation, which the district court granted. Essex then requested that the court instruct the jury to disregard any evidence of damages because the Laughlins were not joined in the counterclaim as *716 co-owners of Parcel II. The district court did not act on Essex's request.
[¶22] During the final jury instruction conference, the district court overruled Essex's objection to Jury Instruction No. 12, addressing damages, and declined to give Essex's proffered instruction regarding the void 1993 Amendment. The court reasoned that the parties' stipulated facts adequately addressed the status of the 1993 Amendment and Essex could reference the stipulation during its closing argument.
[¶23] The jury returned its verdict on October 28, 2016, finding that Essex unreasonably withheld its consent to the proposed amendment to modify the covenants. Although Basic requested damages of $315,000, the amount of the O'Reilly contract, the jury awarded $200,000.
[¶24] The district court requested briefing and closing argument on Basic's claim for injunctive relief. Basic requested attorney fees and costs, and Essex renewed its motion for judgment as a matter of law seeking dismissal of Basic's counterclaim because it did not own all of Parcel II. During a February 2017 hearing on the pending motions, Basic voluntarily withdrew its claim for injunctive relief. The district court entered a Judgment in favor of Basic for $200,000 on March 3, 2017. The court entered a Corrected Judgment on March 7, 2017, to correct a clerical error. On March 10, 2017, the district court entered its Order on Post Trial Motions, denying Essex's renewed motion for judgment as a matter of law, dismissing Basic's claim for injunctive relief, and awarding attorney fees and costs to Basic.
[¶25] On March 17, 2017, Essex filed its Motion by Plaintiff Essex Holding, LLC Pursuant to Rule 59 and Rule 60 of the Wyoming Rules of Civil Procedure (Rule 59 and 60 motion) requesting that the district court alter or amend the judgment or, alternatively, grant relief from the judgment. Basic opposed the motion, contending it essentially repeated arguments the district court had previously rejected. Basic asserted that the only "new argument" in the motion-that there was insufficient evidence to support the jury's damages award-lacked merit. The district court denied Essex's Rule 59 and 60 motion by its Order Denying Second Post Trial Motion, filed on May 4, 2017.
[¶26] Essex filed its Notice of Appeal on May 26, 2017. The district court entered a Corrected Order on Post Trial Motions and Judgment on May 31, 2017, fixing a clerical error and modifying the title. Essex amended its Notice of Appeal to include the corrected order on June 19, 2017.
[¶27] Basic moved this Court to dismiss Essex's appeal of the underlying judgment, claiming that Essex's Rule 59 and 60 motion was a motion for reconsideration that rendered the appeal untimely. This Court took the motion to dismiss under advisement pending oral argument.
DISCUSSION
I. Did Essex timely file its Notice of Appeal?
[¶28] We first determine whether the Court has jurisdiction to consider this appeal. Evans v. Moyer , 2012 WY 111, ¶ 9, 282 P.3d 1203, 1208 (Wyo. 2012). "The existence of jurisdiction is a question of law and our review is de novo. " In re Estate of Nielsen , 2011 WY 71, ¶ 11, 252 P.3d 958, 961 (Wyo. 2011). Our jurisdiction is limited to timely appeals from final, appealable orders. Id. ; W.R.A.P. 1.03 ; W.R.A.P. 1.04. A notice of appeal is timely if filed within 30 days from entry of the appealable order. W.R.A.P. 2.01(a). Essex did not file its Notice of Appeal within 30 days of the entry of the Order on Post Trial Motions and Judgment,[2] so we must determine whether its Rule 59 and 60 motion tolled the time for appeal.
[¶29] In civil cases, the time for appeal is tolled when a party timely files
a motion for judgment under Rule 50(b), Wyo. R. Civ. P.; a motion to amend or make additional findings of fact under Rule 52(b), Wyo. R. Civ. P., whether or not alteration of the judgment would be required *717 if the motion is granted; a motion to alter or amend the judgment under Rule 59 [e ], Wyo. R. Civ. P. , or a motion for a new trial under Rule 59 [a], Wyo. R. Civ. P.
W.R.A.P. 2.02(a) (emphasis added).
[¶30] We held in Sherman v. Rose , 943 P.2d 719 (Wyo. 1997), that a motion not titled as a motion to alter or amend-in that case, a "motion to reconsider"-tolls the time for appeal only if it is the "functional equivalent" of a motion to alter or amend under Rule 59(e). Id. at 719-21. Citing federal district court cases, we defined the "functional equivalent" of a motion to alter or amend as a motion that rests on one of three appropriate grounds: "1) an intervening change in controlling law; 2) the availability of new evidence not available at the time the case was originally heard; or 3) the need to correct a clear error of law or prevent manifest injustice." Id. at 721 (citations omitted). We concluded that a motion merely "argu[ing] matters already presented and disposed of by the trial court" was not an appropriate ground for relief under Rule 59(e) and would not toll the time for appeal. Id. (citation omitted).
[¶31] In Morehouse v. Morehouse , 959 P.2d 179, 180-81 (Wyo. 1998), we extended the analysis set out in Sherman to properly labeled motions "to alter or amend" under Rule 59(e). We held that a motion to alter or amend fails to toll the time for appeal if, upon our careful review of the record, we find the motion to be the functional equivalent of a motion to reconsider, one that only advances previously decided arguments and does not contain appropriate grounds for relief under the rule. Id ., 959 P.2d at 181.
[¶32] In Plymale v. Donnelly , 2006 WY 3, 125 P.3d 1022 (Wyo. 2006), we retreated from the substantive review of post-judgment motions required by Sherman . The appellant had filed a motion for the district court to "reconsider" its order and then appealed the district court's denial of her motion. Id. at ¶ 1, 125 P.3d at 1023. We characterized a motion to reconsider as a "legal fiction" unauthorized by the Wyoming Rules of Civil Procedure. Id. at ¶ 8, 125 P.3d at 1025 (citing Pitts v. Ohio Dep't of Transp. , 67 Ohio St.2d 378, 423 N.E.2d 1105, 1107 (1981) ). Thus, the motion was a "nullity" and "all judgments or final orders from [such a] motion are a nullity" from which an appeal may not be taken. Id. at ¶¶ 8, 10, 125 P.3d at 1025. Without examining the substance of the appellant's motion to reconsider, we declared the motion to be void based on its title alone. Id. at ¶ 11, 125 P.3d at 1025. We reasoned that ascertaining whether a motion to reconsider asserted proper grounds to alter or amend a judgment under Rule 59(e) was "a waste of judicial resources," saddling the courts with "the arduous task of trying to inspect [the substance of] each and every motion for reconsideration which is filed in the trial court after a final judgment" to determine whether it can be considered a motion sanctioned by the rules of procedure. Id. We observed that it is "a costly procedure, both financially and in manual labor, which ... results in a procedural morass which clouds the merits" and, "besides being inefficient, ... produce[s] inconsistent results." Id. at ¶¶ 8-9, 125 P.3d at 1025. We held that "[t]his Court will no longer look at the substance of such a motion but rather simply declare it a nullity based upon its denomination." Id . at ¶ 11, 125 P.3d at 1025.
[¶33] In Ragsdale v. Hartford Underwriters Ins. Co. , however, we confined our holding in Plymale to motions titled as motions for reconsideration. 2007 WY 163, ¶ 4, 169 P.3d 78, 80 (Wyo. 2007). Returning to the framework established by Sherman and Morehouse , we stated that even motions properly titled as a "motion to alter or amend" under Rule 59(e) must contain proper grounds for relief to toll the time for appeal:
In this appeal, the decisive issue is the categorization of [the appellant's] "Motion to Alter or Amend." With the exception of motions denominated as motions for reconsideration, which are automatically void, this Court looks to the substance of a motion in order to determine the appropriateness of the motion. See Plymale , ¶ 6, 125 P.3d at 1024 ; Morehouse v. Morehouse , 959 P.2d 179 (Wyo. 1998) ; Sherman v. Rose , 943 P.2d 719, 721 (Wyo. 1997).
*718 Id. We found that the appellant's motion, although properly titled, merely repeated arguments that the appellant had made at summary judgment. Id. at ¶ 6, 169 P.3d at 80. Because this Court's review of the substance of the motion did not reveal proper grounds for relief under Rule 59(e), it did not toll the time for appeal.[3] Id. at ¶ 8, 169 P.3d at 81. Thus, whether a motion was titled a motion to reconsider, or appeared after review of its substance to be a motion to reconsider, it would not toll the time for appeal.
[¶34] This Court has continued to apply the analysis set out in Sherman and refined by Morehouse , Plymale , and Ragsdale . See , e.g. , Byrnes v. Harper , 2018 WY 21, ¶ 8, 411 P.3d 427, 430 (Wyo. 2018) ; Lokey v. Irwin , 2016 WY 50, ¶ 8, 374 P.3d 311, 315 (Wyo. 2016) ; Waldron v. Waldron , 2015 WY 64, ¶ 12, 349 P.3d 974, 977 (Wyo. 2015) ; In re Estate of Nielsen , 2011 WY 71, ¶ 12, 252 P.3d at 961. However, we find that Sherman incorrectly interpreted federal law and, as a result, improperly conflated the grounds upon which a trial court decides to grant or deny a Rule 59(e) motion with the grounds to determine whether the motion constituted a valid Rule 59(e) motion for the purposes of tolling the time for appeal.
[¶35] In Sherman , we stated:
Appropriate new grounds [that will render a motion the "functional equivalent" of a motion to alter or amend under Rule 59(e) ] are: 1) an intervening change in controlling law; 2) the availability of new evidence not available at the time the case was originally heard; or 3) the need to correct a clear error of law or prevent manifest injustice. See Waye [v. First Citizen's Nat'l Bank ], 846 F.Supp. [310,] 313 [ (M.D. Pa. 1994) ]; Atkins v. Marathon LeTourneau Co. , 130 F.R.D. 625, 626 (S.D. Miss.1990). A motion that does not contain any of these new grounds is not a motion to alter or amend the judgment, and the time for filing a notice of appeal runs from the date of the judgment. See Frito-Lay of Puerto Rico, Inc. v. Cañas , 92 F.R.D. 384, 390 (D.C. Puerto Rico 1981). The filing of a motion that is not to be treated as a motion to alter or amend the judgment will not stay the time for appeal. See [ Davis v. ] Lukhard , 106 F.R.D. [317,] 318 [ (E.D. Va. 1984) ].
Id. , 943 P.2d at 721 (footnote omitted). Our error was in relying on trial court decisions discussing grounds to dismiss Rule 59(e) motions, rather than appellate decisions discussing grounds to toll time for appeal. In Davis v. Lukhard , the federal district court dismissed the plaintiff's Rule 59(e) motion as untimely. 106 F.R.D. 317, 318 (E.D. Va. 1984). The court also indicated that, even if timely, the motion could have been denied because the motion merely "reargue[d] matters already argued and disposed of...." Id. Davis did not consider whether such a motion would "stay the time for appeal." See id. In fact, the case was appealed to the Fourth Circuit, which heard the appeal with no mention of a tolling issue. Davis v. Lukhard , 788 F.2d 973 (4th Cir. 1986). Likewise, in Waye v. First Citizen's National Bank , the federal district court denied the plaintiff's motion for reconsideration because the plaintiff failed to assert proper grounds for relief. 846 F.Supp. 310, 314 (M.D. Pa. 1994). The Third Circuit considered the appeal and summarily affirmed the decision. Waye v. First Citizens Nat'l Bank , 31 F.3d 1175 (3d Cir. 1994). In Atkins v. Marathon Le Tourneau Co. , the federal district court denied the defendant's motion because it merely reargued its motion for summary judgment. 130 F.R.D. 625, 626 (S.D. Miss. 1990). Finally, in Frito-Lay of Puerto Rico v. Cañas , the federal district *719 court denied the Rule 59(e) motion because it "merely reassert[ed] legal arguments previously made ... [and] carefully considered by the Court." 92 F.R.D. 384, 390 (D. P.R. 1981). The Frito-Lay court stated that, where the movant
has brought up nothing new-except his displeasure-this Court has no proper basis upon which to alter or amend the order previously entered. The judgment may indeed be based upon an erroneous view of the law, but, if so, the proper recourse is appeal -not reargument.
Id. (citations omitted) (emphasis added). No case cited by Sherman stands for the proposition that denial of a Rule 59(e) motion nullifies the tolling effect of a Rule 59(e) motion. In fact, their history demonstrates that the district court's reasons for denying the motions had no effect on their appealability.
[¶36] Our conclusion that Sherman misinterpreted federal law is further supported by an examination of federal cases addressing Rule 59(e) in the context of tolling time for appeal. "When this Court construes rules of civil procedure which are virtually identical to their federal counterparts, pertinent federal authority is persuasive." Busch v. Horton Automatics, Inc. , 2008 WY 140, ¶ 14, 196 P.3d 787, 790 (Wyo. 2008) ; see also Windham v. Windham , 2015 WY 61, ¶ 20, 348 P.3d 836, 842 (Wyo. 2015) ("Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules." (citations omitted) ).[4] Regardless of its denomination, federal courts look to the substance of a motion to determine whether it falls under Rule 59(e). But, unlike Sherman , federal courts do not consider whether the movant alleged appropriate grounds for relief under Rule 59(e) ; instead, the courts look to the nature of "the relief requested ." Yost v. Stout , 607 F.3d 1239, 1243 (10th Cir. 2010) (citing Hannon v. Maschner , 981 F.2d 1142, 1145 n.2 (10th Cir. 1992) ) (emphasis added); see also Home Loan Inv. Co. v. St. Paul Mercury Ins. Co. , 827 F.3d 1256, 1270 (10th Cir. 2016) ; Gulf Power Co. v. Coalsales II, LLC , 522 F. App'x 699, 710 (11th Cir. 2013). In the context of tolling the time for appeal, the Tenth Circuit has stated: "Where the motion requests a substantive change in the district court's judgment or otherwise questions its substantive correctness, the motion is a Rule 59 motion, regardless of its label." Yost , 607 F.3d at 1243 (citations omitted). Conversely, if the motion "raises legal issues collateral to the main cause of action-issues to which Rule 59(e) was never intended to apply"-the motion cannot be characterized as a motion to alter or amend under Rule 59(e). Id. (quoting White v. New Hampshire Dep't of Emp't Sec. , 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982) ). Although a "motion to reconsider" does not exist under the Federal Rules of Civil Procedure, federal courts do not regard such a motion as a nullity-instead, "a motion [to reconsider] that seeks to challenge the merits of a ruling by a district court will automatically be considered as having been filed under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure."[5] Anderson v. Holy See , 934 F.Supp.2d 954, 957 (N.D. Ill. 2013), aff'd on other grounds , 759 F.3d 645 (7th Cir. 2014) ; see also , e.g. , Villanueva-Mendez v. Nieves Vazquez , 360 F.Supp.2d 320, 323 (D. P.R. 2005), aff'd , 440 F.3d 11 (1st Cir. 2006) (citing Perez-Perez v. Popular Leasing Rental, Inc. , 993 F.2d 281, 284 (1st Cir. 1993) ); Anderson , 934 F.Supp.2d at 957.
[¶37] Regardless of context, it is well settled in federal courts that any timely-filed, postjudgment motion that asks the court to "reconsider" substantive matters is treated as a Rule 59(e) motion for purposes of appellate review. E.g. , Osterneck v. Ernst & Whinney , 489 U.S. 169, 174, 109 S.Ct. 987, 990, 103 L.Ed.2d 146 (1989) (quoting White , 455 U.S. at 451, 102 S.Ct. at 1166 ("[A] postjudgment *720 motion will be considered a Rule 59(e) motion where it involves 'reconsideration of matters properly encompassed in a decision on the merits.' ") ); APR Energy, LLC v. First Inv. Grp. Corp. , No. 3:14-CV-575-J-34JBT, 2015 WL 736236, at *3 (M.D. Fla. Feb. 20, 2015) (citing Finch v. City of Vernon , 845 F.2d 256, 258 (11th Cir. 1988) ) (" Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of a dispute, and not matters collateral to the merits."); Scharr v. Hollembeak , 675 F. App'x 364, 365 (4th Cir. 2017) (quoting Dove v. CODESCO , 569 F.2d 807, 809 (4th Cir. 1978) ("[I]f a post-judgment motion is [timely] filed ... and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled.") ); Piper v. United States Dep't of Justice , 312 F.Supp.2d 17, 20 (D. D.C. 2004), as amended (May 13, 2004) ("The D.C. Circuit has stated that motions to reconsider are routinely construed as motions to clarify or alter or amend judgment under Rule 59(e). This 'treatment is appropriate even though the movant does not specify under which rule relief is sought, because any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.' " (citation omitted) ); Obriecht v. Raemisch , 517 F.3d 489, 493 (7th Cir. 2008) (where the district court denied appellant's post-judgment motion, the court noted that the appellant sought reconsideration of errors of law, i.e., a matter decided on the merits, and thus deemed the motion as made under Rule 59(e), rather than Rule 60(b) ).
[¶38] Identifying the type of relief requested in a motion is different from our analysis in Sherman and its progeny where we examined the grounds upon which the motion rests and determined whether those grounds simply rehash arguments already decided by the court. A motion attempting to relitigate previously decided issues will likely be denied by a federal district court. In re Scotts EZ Seed Litig. , No. 12 CV 4727 (VB), 2018 WL 1274965, at *1 (S.D. N.Y. Mar. 5, 2018) (denial is justified where the motion makes "repetitive arguments on issues that have been thoroughly considered by the court"); see also , e.g. , Richey v. Borough , No. 3:14-CV-00170 JWS, 2015 WL 1962880, at *1 (D. Alaska Apr. 30, 2015) ("A motion will not be granted if it simply repeats arguments that were made, or could have been made, when the court reached its original decision."); In re M & L Bus. Mach. Co., Inc. , 169 B.R. 711, 714 (D. Colo. 1994) ("[A] party is not entitled to reopen a settled matter because he failed to interpose a defense that could have been presented at trial or to present all of the facts known to him at that time."). However, a motion that requests the court to reconsider settled matters will not be deemed invalid by the appellate court for purposes of tolling the time for appeal.
[¶39] We are persuaded that the federal approach to identifying motions made under Rule 59(e) is better reasoned and more likely to achieve a just result. An appellate court wastes judicial resources by confirming that the motion did not repeat issues made before judgment was entered. It is an "arduous" process that is both "inefficient" and susceptible to "inconsistent results."[6] Plymale , 2006 WY 3, ¶¶ 8-9, 125 P.3d at 1025. It compels this Court to review the merits of the motion to determine whether the motion could be asserted at all-effectively premising the validity of a post-judgment motion on the likelihood of its success. Finally, it denies the right of appeal to an appellant who files a post-judgment motion that merely repeats arguments, even though the very reason that a trial court should deny such a motion is that the appellant's "proper recourse is appeal-not reargument." Frito-Lay , 92 F.R.D. at 390. "We do not function for the purpose of ... mak[ing] an appeal disappear, but exist to administer justice to those who come to settle their disputes." Blake v. Rupe , 651 P.2d 1096, 1114 (Wyo. 1982), superseded by statute , Paxton Res., L.L.C. v. Brannaman , 2004 WY 93, 95 P.3d 796 (Wyo. 2004).
*721 [¶40] We thus hold, for the purpose of tolling the time to appeal a judgment or appealable order in a civil case, a post-judgment motion, however titled, is not a "nullity" and shall be treated as a Rule 59(e) motion if it challenges the merits of the judgment and is filed no later than 28 days after the entry of the judgment. To the extent that our prior cases held to the contrary, they are overruled. Essex's Rule 59 and 60 motion asked the district court to consider the merits of its judgment and was timely filed; thus, it tolled the time for Essex to file its Notice of Appeal. The district court entered its order denying the Rule 59 and 60 motion on May 4, 2017. Essex timely filed its Notice of Appeal on May 26, 2017. Having jurisdiction, we deny Basic's motion to dismiss and proceed to the merits of Essex's appeal.
II. Did Basic have standing to assert its counterclaim?
[¶41] Essex contends that Basic lacked standing to bring its counterclaim because it failed to join the Laughlins, as owners of Parcel II-A, in its claim for damages caused by the failed sale of Parcel II-D. Essex relies on ¶ 8(b) of the ECRs, which states:
In the event of breach or threatened breach of this agreement, only all record owners of Parcel I as a group, or the record owners of Parcel II as a group, or the record owners of Parcel III as a group ... shall be entitled to institute proceedings for full and adequate relief from the consequences of said breach.
Essex alleges that the Laughlins were in the group of owners of Parcel II and thus were required to be included in proceedings for damages related to that parcel. The district court concluded that Basic had standing because it was the sole owner of Parcel III.
[¶42] "Standing implicates a court's subject matter jurisdiction and can, therefore, be challenged at any time." Gheen v. State ex rel. Dep't of Health, Div. of Healthcare Fin./EqualityCare , 2014 WY 70, ¶ 15, 326 P.3d 918, 923 (Wyo. 2014). The existence of standing is strictly a legal issue and our review is de novo. Halliburton Energy Servs., Inc. v. Gunter , 2007 WY 151, ¶ 10, 167 P.3d 645, 649 (Wyo. 2007) (citations omitted). Resolution of the standing issue requires that we interpret the ECRs.
Covenants are contractual in nature and are interpreted according to principles of contract law. A court's goal is to determine and effectuate the intention of the parties, especially the grantor or declarant. We first examine the language of the covenants and give the words their plain and ordinary meaning. We consider the whole document and not just one clause or paragraph. A disagreement between the parties as to the meaning of covenants does not give rise to an ambiguity.
Omohundro v. Sullivan , 2009 WY 38, ¶ 9, 202 P.3d 1077, 1081 (Wyo. 2009) (internal citations omitted). Further,
[E]ven if a contract is unambiguous, we can examine evidence of the circumstances surrounding the execution of the [covenants] to arrive at the parties' intent. Relevant considerations may include the relationship of the parties, the subject matter of the contract, and the parties' purpose in making the contract.
Id. at ¶ 22, 202 P.3d at 1084 (internal citations omitted). The construction and interpretation of a contract also is a matter of law that we review de novo. Felix Felicis, LLC v. Riva Ridge Owners Ass'n , 2016 WY 67, ¶ 16, 375 P.3d 769, 774 (Wyo. 2016) (citations omitted).
[¶43] We addressed a similar issue in Anderson v. Bommer , 926 P.2d 959 (Wyo. 1996). Anderson and Bommer owned adjacent lots in a subdivision in Jackson. Id. at 961. Restrictive covenants encumbered the lots. Id. Bommer filed a lawsuit seeking to enjoin Anderson from violating the restrictive covenants. Id. Anderson asserted Bommer lacked standing to bring the action because the restrictive covenants required the original declarant of the restrictive covenants or a majority of the current subdivision owners to bring the action. Id. at 962. In analyzing standing, we interpreted the covenants as a whole and determined that the recitals were also significant as they expressed the intent and purposes for which the covenants were formulated. Id. We explained:
*722 In resolving Anderson's contention that a majority of the owners must join in the suit, we are guided by our rule that contract provisions which apparently conflict must be reconciled if such can be done by any reasonable interpretation. Morris v. Kadrmas , 812 P.2d 549, 553 (Wyo. 1991). As a general rule, a restrictive covenant may be enforced by one whose benefit it was made. 21 C.J.S. Covenants § 34 (1990). Here the recitals state that the covenants are for the beneficial development of the land, are for the mutual benefit of the owners and all future record owners, and that the power to enforce such covenants resides in all record owners. We conclude, therefore, that the recitals clearly and unambiguously grant the power to enforce the covenants in each and every record property owner . See Morris , at 553 (introductory language to covenants recited that the covenants were for the benefit of each and every lot and the owner or owners thereof, and an owner had the right to enforce the covenants and the legal right to correct any violation).
Id. (emphasis added).
[¶44] The ECRs do not contain language as extensive as that set forth in the Anderson recitals. The ECRs do, however, expressly state that the covenants are for the benefit of "all " future owners of Parcels I, II, and III. (ECR ¶ B, emphasis added). The ECRs also expressly intend "that Parcels I, II, III, and IV be developed in conjunction with each other ... to form a commercial shopping center...." (ECR ¶ A.4, emphasis added). Essex urges us to read ¶ 8(b) as allowing only record owners of the parcel affected by the breach to institute proceedings, which would conflict with the broader statement in ¶ B. However, the rules of contract interpretation require us to reconcile any conflict if we can do so by any reasonable interpretation. Anderson , 926 P.2d at 962 (citations omitted).
[¶45] We conclude that ¶ 8(b) is more reasonably interpreted to permit all record owners of any one parcel to file a lawsuit to enforce the covenants regardless of which parcel is affected by the alleged breach. Essex's proposed interpretation of ¶ 8(b)'s standing limitation is, at best, implicit in its language. However, the express purpose of the ECRs was for the collaborative development of a shopping center. Moreover, each parcel owner holds an access easement for, and therefore has an interest in, the common areas in each parcel. Our interpretation of ¶ 8(b) acknowledges the common interest in all parcels, does not require us to add language to the covenants, does not limit standing by implication, and does not conflict with ¶ B or ¶ A.4. Our reading also accords with the general rule allowing a restrictive covenant running with the land to be enforced by one for whose benefit it was made. See 21 C.J.S. Covenants § 46 (September 2018 update) ; Anderson , 926 P.2d at 962. The ECRs were made for Basic's benefit as the owner of Parcel II-D and the sole owner of Parcel III. We hold that Basic had standing to bring its counterclaim.
III. Did the district court err when it submitted Basic's counterclaim for breach of contract to the jury?
[¶46] Essex argues that because the parties stipulated that the 1993 Amendment was void, Essex could not unreasonably withhold its consent to Basic's proposal to replace one paragraph of the void amendment. Essex further argues that Basic's counterclaim is not ripe because its modification request violated the ECRs because: (1) Basic did not obtain consent from the Laughlins; (2) not all owners of Parcel II initiated the counterclaim;[7] (3) the ECRs do not permit money damages; and (4) to modify the common area ratio requirement, the ECRs require the consent of 75% of the owners of Parcel I (Essex) and 75% of the owners of Parcel II (Basic and Laughlins), which Basic did not obtain.
[¶47] Essex's argument relates to the district court's denial of its motion for summary judgment on whether Basic could prove its breach of contract counterclaim.
*723 While the denial of Essex's summary judgment motion is not appealable, see , e.g., Halvorson v. Sweetwater Cty. Sch. Dist. No. 1 , 2015 WY 18, ¶ 21, 342 P.3d 395, 402 (Wyo. 2015), the alleged trial court errors constituting matters of law from all these motions merged into and were preserved for our review in the final appealable Order Denying Second Post-Trial Motion. See State Farm Mut. Auto Ins. Co. v. Shrader , 882 P.2d 813, 820 (Wyo. 1994) (citations omitted). We review issues of law de novo. Lurie v. Blackwell , 2002 WY 110, ¶ 7, 51 P.3d 846, 848 (Wyo. 2002) (citations omitted) (explaining that where facts contained in the record are essentially undisputed, the appeal presents an issue of law, which is reviewed de novo). We undertake a full review of the record without giving deference to the trial court's views. Wyo. Med. Ctr., Inc. v. Murray , 2001 WY 63, ¶ 7, 27 P.3d 266, 268 (Wyo. 2001).
A. Validity of Proposed Written Modification
[¶48] The lynchpin of Essex's argument is that Basic proposed only one ECR amendment for Essex's consideration. This view is unsupported by the evidence presented at summary judgment and during trial. Basic initially proposed to replace the first paragraph of the 1993 Amendment. However, after Essex notified Basic that the 1993 Amendment lacked a required signature, Basic made multiple additional requests for Essex to negotiate an amendment permitting the development of Parcel II-D.
[¶49] The issue is not whether Essex unreasonably withheld its consent to the initial draft of the proposed amendment but, rather, whether Essex unreasonably withheld its consent to Basic's repeated requests to modify the ECRs to allow development of Parcel II (as was intended by the 1993 Amendment). Viewing the evidence de novo in the context of the parties' rights and responsibilities under the ECRs, the void 1993 Amendment did not preclude Basic's counterclaim as a matter of law. The ECRs state: "This agreement may be modified ... only by written consent of all record owners ... which consents shall not be unreasonably withheld." The ECRs do not condition consent on receipt of a valid, proposed written amendment. Essex's main contention is that Basic never submitted a valid request to Essex to modify the ECRs because Basic's written proposal was "wholly dependent upon the existence and validity of the 1993 Amendment[ ]...." Essex relies on Anadarko Land Corp. v. Family Tree Corp. , 2017 WY 24, 389 P.3d 1218 (Wyo. 2017) to support its position that Basic's written proposal, even if fully executed, would be ineffective to amend the ECRs and Essex's withholding of consent was not unreasonable as a matter of law. Essex's reliance on Anadarko is misplaced. In Anadarko , the issue was whether a tax deed was void ab initio , thus making any transfer of title thereafter ineffective. Id. at ¶ 16, 389 P.3d at 1223. The issue in this case turns on the contractual rights and responsibilities of the parties under the ECRs. Essex has not claimed that the ECRs are void; nor can Essex otherwise relate Basic's counterclaim to a conveyance of property with defective title as was the issue in Anadarko . Thus, the district court did not err when it submitted Basic's counterclaim to the jury.
B. Laughlins' Consent
[¶50] Essex also argues that, as a matter of law, it could not have breached the ECRs because modifying the ECRs required the consent of all record owners and, further, modification of the "common areas" required mutual agreement of 75% of the owners of Parcel I and 75% of the owners of Parcel II. Yet the Laughlins did not provide their written consent. Essex's claim lacks merit.
[¶51] When Basic first approached Essex in May 2012, Basic was the sole owner of Parcel II. In September 2012, after months of stonewalling by Essex, Basic sold Parcel II-A to the Laughlins pursuant to a contract for deed, requiring the Laughlins to provide their written consent to Basic's proposed modification, if requested.[8] Essex acknowledges *724 the contract language; however, it contends a future promise is insufficient to satisfy the ECR requirements. In support of its position, Essex cites Omohundro , 2009 WY 38, 202 P.3d 1077.
[¶52] Omohundro is readily distinguishable. There, development and annexation plans were placed on hold until the court determined whether the restrictive covenants required consent from the other tract owners. Id. at ¶ 5, 202 P.3d at 1080. The issue was not whether another owner unreasonably withheld its consent to the development plan. Basic's claim that Essex unreasonably withheld its consent did not depend on the Laughlins' consent. See Goglio v. Star Valley Ranch Ass'n , 2002 WY 94, ¶ 40, 48 P.3d 1072, 1086 (Wyo. 2002) (holding that the homeowners' association did not have authority to unilaterally impose a water use fee where the covenants required approval by 2/3 of the membership).
[¶53] Essex presented no evidence that the ECRs prioritized the order of obtaining consents, or otherwise required Basic to obtain the Laughlins' consent before requesting Essex's consent to modify the ECRs. Nothing in the record indicates that the Laughlins would not have complied with their contractual obligation to consent if Basic had asked. Essex failed to demonstrate that Basic's claim depended on the Laughlins' prior consent as a matter of law.[9]
C. Money Damages
[¶54] Essex asserts that the ECRs do not permit monetary damages; thus, the district court erred by permitting Basic's damages claim to go to the jury. Essex argues that monetary damages are not available for enforcement of equitable servitudes despite the contractual nature of restrictive covenants.[10]
[¶55] It is well established that both legal and equitable remedies are available in covenant enforcement actions:
Valid covenants, like other contracts and property interests, can be enforced and protected by both legal and equitable remedies as appropriate, without regard to the form of the transaction that created the servitude.
21 C.J.S. Covenants § 65 (September 2018 update) (footnote omitted). The parties to the ECRs could have limited the remedies available in the event of a breach, but did not do so. The ECRs expressly provide for "full and adequate relief" from the consequences of a breach. The ECRs do not limit or exclude monetary damages. The Court cannot insert words into the contract that are not there. E.g ., Snyder v. Lovercheck , 992 P.2d 1079, 1089 (Wyo. 1999) (citing Klutznick v. Thulin , 814 P.2d 1267, 1270 (Wyo. 1991) ("Courts are not free to rewrite contracts under the guise of interpretation where the contractual provisions are clear and unambiguous.") ). "[T]he 'language of the parties expressed in their contract must be given effect in accordance with the meaning which the language would convey to reasonable persons at the time and place of its use.' " Berthel Land & Livestock v. Rockies Express Pipeline LLC , 2012 WY 52, ¶ 13, 275 P.3d 423, 430 (Wyo. 2012) (citations omitted). Accordingly, we will give *725 effect to the reasonable meaning of ¶ 8(b) and will not limit the remedies available for a breach where the parties contracted for "full and adequate relief." The district court properly submitted Basic's damages claim to the jury.
IV. Did jury instructions which rejected Essex's theory regarding the void 1993 Amendment constitute plain error?
[¶56] Essex alleges that Jury Instruction No. 11 effectively required the jury to disregard that Basic never requested a valid amendment requiring Essex's consent; the jury instructions, as a whole, presumed Basic made a valid request to modify the ECRs; and the district court should have granted Essex's request for an instruction on the law of the case stating the 1993 Amendment was void. Essex's claims of error rest on the presumption that, because the 1993 Amendment was void, Basic's requests to modify the ECRs were invalid as a matter of law. We determined that the ECRs did not condition consent on receipt of a valid, proposed written amendment; thus, the invalidity of the 1993 Amendment had no effect on whether Essex's withholding of consent was unreasonable. See supra ¶¶ 46-49. For this reason, the challenged jury instructions (and the court's denial of Essex's requested instruction) were not improper.
V. Did cumulative error result in an excess verdict or a verdict contrary to law?
[¶57] Essex alleges that it was prejudiced by the cumulative effect of the district court's errors.
"The purpose of evaluating for cumulative error is to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error ." Sweet v. State , 2010 WY 87, ¶ 40, 234 P.3d 1193, 1207 (Wyo. 2010). "When making this evaluation, we consider only matters that were determined to be errors and not any matter assigned as error but determined not to be erroneous." Id.
In re KMO , 2012 WY 99, ¶ 37, 280 P.3d 1203, 1215 (Wyo. 2012) (emphasis added). Other than the alleged errors dismissed above, Essex claims that the district court erred by instructing the jury on monetary damages. Specifically, Essex claims that Basic suffered no damages because it retained title to the property and may pursue a valid amendment at any time. Essex did not raise the damages instruction as an independent reversible error. However, even if the damages instruction was erroneous, a sole harmless error is insufficient to demonstrate cumulative error. See id. Accordingly, Essex's cumulative error claim fails.
VI. Did the district court properly grant Basic's motion for judgment as a matter of law on Essex's anticipatory repudiation claim?
[¶58] Essex contends that the district court erred by granting Basic's W.R.C.P. 50 motion for judgment as a matter of law and by not submitting Essex's anticipatory repudiation claim to the jury. Essex argues that after the 1993 Amendment was deemed invalid, the relevant portion of Parcel II remained a common area under the ECRs, and Basic threatened to breach the ECRs by pursuing development of Parcel II-D. Essex asserts that Basic does not have to "turn[ ] a shovel" before a threatened breach occurs and relies in part on O'Reilly and Overland representatives' statements suggesting they would proceed to develop with or without Essex's consent.
[¶59] Judgment as a matter of law should be granted cautiously and sparingly. Cargill, Inc. v. Mountain Cement Co. , 891 P.2d 57, 62 (Wyo. 1995) (citation omitted). The district court nevertheless has an obligation to direct entry of a judgment as a matter of law where the evidence is legally insufficient to support a verdict on a particular issue. Dewey v. Wentland , 2002 WY 2, ¶ 28, 38 P.3d 402, 414 (Wyo. 2002) (citation omitted). We review the decision to grant or deny a motion for a judgment as a matter of law de novo. Id . (citation omitted).
[¶60] The elements of anticipatory repudiation are:
*726 (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach under § 243, or
(b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.
Restatement (Second) of Contracts § 250 (June 2018 update) (emphasis added); see also 23 Samuel Williston, Treatise on the Law of Contracts § 63:29 (4th ed. July 2018 update).
[¶61] Regarding whether O'Reilly and Overland representatives are agents of Basic such that their statements are attributable to Basic for purposes of Essex's anticipatory repudiation claim, we have explained:
Courts do not presume that an agency relationship exists. When the relationship of principal and agent is in issue, the party alleging agency has the burden of [proving] both the existence and nature thereof.
Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.
Whether an agency relationship exists is a question of fact; however, when the evidence does not create a question of fact, the courts make that determination as a matter of law.
Fowler v. Westair Enters., Inc. , 906 P.2d 1053, 1055 (Wyo. 1995) (internal citations and quotation marks omitted).
[¶62] Prior to trial, the parties filed Amended Stipulated Facts, agreeing that "O'Reilly's obligation to purchase was contingent upon receipt of all necessary permits and approvals, including an amendment to the ECRs allowing the construction of a building of up to 10,000 square feet on the 'common area' of Parcel II-D." The undisputed evidence at trial demonstrated Basic's sale to O'Reilly was contingent on modification of the ECRs to permit development, which required Essex's consent; O'Reilly was neither an owner of Parcel II nor an obligor under the ECRs; and Essex knew that the O'Reilly and Overland representatives were not Basic's agents, did not represent Basic, and could not bind Basic. There were no disputed facts related to the elements of anticipatory repudiation or agency for the jury to resolve. Basic made no statement to Essex suggesting that it intended to breach the ECRs and took no voluntary affirmative act which rendered it unable or apparently unable to perform without breaching the ECRs. Basic lost its sale contracts with O'Reilly and Overland because it was unwilling to breach the ECRs. Viewing the evidence in a light most favorable to Essex, the record supports one conclusion: Essex's anticipatory repudiation claim was unsupported by legally sufficient evidence. The district court did not err by granting judgment as a matter of law to Basic on this claim.
VII. Did the district court err in its award of attorney fees and costs to Basic?
[¶63] Essex asserts that the district court improperly awarded attorney fees and costs to Basic. Essex first contends that the attorney fees award is inequitable because Basic, as owner of Parcel III, recovered nothing in the litigation, whereas Essex prevailed on its declaratory judgment and quiet title claims concerning the void 1993 Amendment. Second, Essex claims that the attorney fees are unreasonable because Basic failed to submit underlying billing statements necessary to determine if it properly apportioned its fees. "The resolution of whether a party is a prevailing party in determining entitlement to attorney fees is one of law, which we review de novo. The final attorney fee award is, however, reviewed for abuse of discretion." Ultra Res., Inc. v. Hartman , 2010 WY 36, ¶ 149, 226 P.3d 889, 935 (Wyo. 2010) (citations omitted).
[¶64] The plain language of ECR ¶ 8(b) allows the prevailing party to recover its attorney fees: "The unsuccessful party in any action shall pay to the prevailing party a reasonable sum for attorney's fee, which shall be deemed to have accrued on the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment." "We have defined *727 'prevailing party' for purposes of awarding costs of litigation as one who 'improves his or her position by the litigation.' " Ultra Res., Inc. , 2010 WY 36, ¶ 152, 226 P.3d at 936 (quoting Schaub v. Wilson , 969 P.2d 552, 561 (Wyo. 1998) ). The jury awarded Basic $200,000 in damages. Basic's position was thus improved and, by definition, Basic prevailed. Essex's claims for declaratory judgment and quiet title were resolved by stipulation and do not undermine Basic's status as a prevailing party or render the attorney fees and cost award inequitable.
[¶65] We also reject Essex's claim that the attorney fees and costs were unreasonable. "On appeal of an award of attorney fees, the burden is on the party attacking the district court's ruling to show an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did." City of Gillette v. Hladky Constr., Inc. , 2008 WY 134, ¶ 109, 196 P.3d 184, 212 (Wyo. 2008) (citing Burnett v. Steeley , 2008 WY 94, ¶ 35, 190 P.3d 132, 139 (Wyo. 2008) ). We apply the two-factor lodestar test to determine the reasonableness of attorney fee awards: (1) the fee charged should represent the product of reasonable hours times a reasonable rate; and (2) other factors of discretionary application should be considered to adjust the fee upward or downward. Pennaco Energy, Inc. , 2016 WY 34, ¶ 52, 371 P.3d at 131 (citations omitted). The Wyoming legislature has set out the following factors to guide a court's discretion:
(b) In civil actions for which an award of attorney's fees is authorized, the court in its discretion may award reasonable attorney's fees to the prevailing party without requiring expert testimony. In exercising its discretion the court may consider the following factors:
(i) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(ii) The likelihood that the acceptance of the particular employment precluded other employment by the lawyer;
(iii) The fee customarily charged in the locality for similar legal services;
(iv) The amount involved and the results obtained;
(v) The time limitations imposed by the client or by the circumstances;
(vi) The nature and length of the professional relationship with the client;
(vii) The experience, reputation and ability of the lawyer or lawyers performing the services; and
(viii) Whether the fee is fixed or contingent.
Wyo. Stat. Ann. § 1-14-126(b) (LexisNexis 2017).
[¶66] Essex challenged the reliability of Basic's calculation of fees. The district court noted that one of Basic's attorneys submitted billing statements and the other submitted a detailed affidavit of his fees. The court found that the submissions itemized the nature of the service performed, the time expended and the hourly fee customarily charged for such service, and properly found the submissions adequately supported the award of fees. See , e.g. , Jones Land & Livestock Co. v. Fed. Land Bank of Omaha , 733 P.2d 258, 265 (Wyo. 1987) (explaining affidavits and attachments thereto provided sufficient information to uphold the award of attorney fees and costs). Essex also argued that Basic failed to apportion or segregate fees between claims. The district court found that the attorneys' submissions sufficiently documented the specific work attributable to each billing entry, and, upon the court's review, it found that all the charges were either attributable to the claims at issue or involved the type of work that cannot be apportioned.
[¶67] The district court awarded $109,070.00 in attorney fees. It noted Basic's attorney fee rate of $250 per hour was not unreasonable, considering that lawyers in Sweetwater County commonly charge $200 per hour in more straightforward matters. It described $250 per hour as a modest rate in comparison to other cases involving complex litigation and cited in Ultra Res., Inc. , 2010 WY 36, ¶ 164, 226 P.3d at 939, in which we found hourly rates of $300 to $400 reasonable for senior litigation attorneys in a complex oil and gas case eight years ago. The court noted that, due to the complex issues and jury trial, the case required significant legal *728 skills; Basic's counsel had substantial experience in civil litigation and jury trials; and discovery and pretrial issues were litigated rather than resolved without court intervention (resulting in 230 docket entries). The district court thus found the number of hours, the hourly rate, and the overall fee request to be reasonable.
[¶68] We find no abuse of discretion. The district court applied the lodestar test and considered the factors set out in Wyo. Stat. Ann. § 1-14-126(b). "Having dealt with this case for a very long period of time, the district court was in the best position to analyze the attorneys' efforts and time." Ultra Res ., 2010 WY 36, ¶ 164, 226 P.3d 889. We uphold the attorney fees and costs award.
VIII. Did the district court properly deny Essex's W.R.C.P. 60(b) motion?
[¶69] Essex also seeks relief from the final judgment pursuant to W.R.C.P. 60(b), which provides in pertinent part:
(b) Grounds for Relief from a Final Judgment, Order, or Proceeding .-On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
....
(4) the judgment is void;
....
(6) any other reason that justifies relief.
W.R.C.P. 60(b). "An order denying relief under W.R.C.P. 60(b) is appealable." Andersen v. Hernandez , 2005 WY 142, ¶ 10, 122 P.3d 950, 952 (Wyo. 2005) (citing Dexter v. O'Neal , 649 P.2d 680, 681 (Wyo. 1982) ). Denial of relief under W.R.C.P. 60(b) is within the trial court's discretion. State ex rel. TRL by Avery v. RLP , 772 P.2d 1054, 1057 (Wyo. 1989) (citation omitted). Our review is for an abuse of that discretion, unless the judgment is attacked under W.R.C.P. 60(b)(4). Id. The judgment is either void or it is valid, and the trial court must act accordingly. Id. (citation omitted). "A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." Matter of Guardianship of MKH , 2016 WY 103, ¶ 15, 382 P.3d 1096, 1100 (Wyo. 2016) (citations omitted).
[¶70] Essex requests relief pursuant to Rule 60(b)(4), claiming the judgment is void because Basic premised the proposed modification of the ECRs on the void 1993 Amendment. We fully addressed this argument and concluded that the validity of the 1993 Amendment did not invalidate Basic's claim that Essex breached the ECRs. See supra ¶¶ 46-49. There is no jurisdictional defect warranting Essex's requested relief under Rule 60(b)(4).[11] See , e.g. , In Interest of WM , 778 P.2d 1106, 1112 (Wyo. 1989) (explaining that the alleged errors did not constitute a jurisdictional defect; thus, the judgment was not void and the appropriate remedy for any error in the application of the law is a timely appeal from the final order).
[¶71] Essex further claims that relief is justified under Rule 60(b)(6) because (1) the jury awarded excessive damages when only injunctive relief is proper, (2) the judgment is not sustained by the evidence because Basic failed to comply with the ECRs in obtaining consent from the other record owners and did not present a valid proposed amendment for Essex's consideration, and (3) the court improperly granted judgment as a matter of law on Essex's claim for anticipatory repudiation. These issues are not appropriate for consideration under Rule 60(b)(6).
[¶72] An order denying relief under Rule 60(b) is appealable; however, the issue is "severely limited" because "[a]n appeal from a denial of a Rule 60(b) motion addresses only the district court's order denying the motion, and not the underlying decision itself." Gifford v. Casper Neon Sign Co. , 639 P.2d 1385, 1388 (Wyo. 1982) ; Servants of Paraclete v. Does , 204 F.3d 1005, 1009 (10th Cir. 2000) (citation omitted).[12] In other words, "a motion under Rule 60(b)
*729 cannot be used as a substitute for [a direct] appeal" of the underlying judgment. United States v. 31.63 Acres of Land , 840 F.2d 760, 761 (10th Cir. 1988) (citing Morris v. Adams-Millis Corp. , 758 F.2d 1352, 1357 (10th Cir. 1985) ); see also Gifford , 639 P.2d at 1388. "In order to obtain relief under Rule 60(b)(6) the appellant must show the existence of unusual circumstances that justify the extraordinary relief requested." 31.63 Acres of Land , 840 F.2d at 761 (citations omitted). Merely arguing the merits of the underlying judgment is not sufficient to show the existence of unusual circumstances justifying relief. Id. at 761-62.
[¶73] Essex's Rule 60(b)(6) argument relies solely on the issues decided by the district court before, during, and after trial, as presented in Essex's Rule 59(e) argument. As support for its Rule 60(b)(6) claim, Essex simply states:
In addition, Rule 60 allows relief from judgment for any other reasons justifying relief from the operation of the judgment or that justify relief from the judgment. Based upon the foregoing sections of this Memorandum [pertaining to Essex's Rule 59(e) argument] that are re-incorporated in this section, Essex requests relief.
"Motions under Rule 60(b) 'are inappropriate vehicles to reargue an issue previously addressed by the court.' " Davis v. Simmons , 165 F. App'x 687, 690 (10th Cir. 2006) (quoting Servants of Paraclete , 204 F.3d at 1012 ). Essex failed to raise any new issue in its Rule 60(b)(6) argument. Moreover, Essex failed to articulate any extraordinary circumstance entitling it to relief under Rule 60(b)(6). See , e.g. , Pierce v. Cook & Co. , 518 F.2d 720, 723 (10th Cir. 1975) (en banc), cert. denied , 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976) (granting relief under Rule 60(b)(6) due to extraordinary circumstance of a post-judgment change in the law arising out of the same accident as that in which the plaintiffs were injured). Thus, the district court properly denied Essex's Rule 60(b)(6) claim.
[¶74] Affirmed.

Mr. Langfan testified that he was not familiar with the area where the shopping center is located.

The Order on Post Trial Motions and Judgment resolved Basic's last remaining claim and, thus, is the final appealable order. See , e.g. , Estate of McLean ex rel. Hall v. Benson , 2003 WY 78, ¶ 8, 71 P.3d 750, 753 (Wyo. 2003) ; W.R.C.P. 54(b).

In Ragsdale , we reviewed a motion to alter or amend a summary judgment. A few courts have ruled that Rule 59(e) only applies to judgments entered after a trial. See , e.g. , Moodie v. Fed. Reserve Bank of New York , 835 F.Supp. 751, 752 (S.D. N.Y. 1993) ; Hill v. Bethlehem Steel Corp. , 729 F.Supp. 1071, 1072 n.1 (E.D. Pa. 1989), aff'd , 902 F.2d 1560 (3d Cir. 1990), and aff'd sub nom. Hucaluk v. Bethlehem Steel Corp. , 902 F.2d 1560 (3d Cir. 1990). However, it appears that most courts consider a Rule 59(e) motion as a proper means to seek to alter or amend summary judgment. See , e.g. , In re Louisiana Crawfish Producers , 852 F.3d 456, 462 (5th Cir. 2017) ; In re Owens , 483 B.R. 262, 267 (Bankr. N.D. Ga. 2012) ; Roberge v. Eli Lilly & Co. , 393 F.Supp.2d 49, 52 (D. D.C. 2005) ; Hashwani v. Barbar , 822 F.2d 1038, 1041 (11th Cir. 1987). The plain language of Rule 59(e) permits a motion to alter or amend "a judgment." We see no basis to characterize a summary judgment as anything less.

F.R.C.P. 59(e) is identical to W.R.C.P. 59(e) : "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

Currently, federal courts do not distinguish between Rule 59(e) motions and Rule 60(b) motions for tolling purposes because F.R.A.P. 4 -unlike W.R.A.P. 2.02 -allows a motion under either rule to toll time. F.R.A.P. 4(a)(4)(A)(iv), (vi).

On the other hand, a district court is familiar with the course of proceedings and may quickly identify redundant arguments; a motion that merely repeats arguments will not satisfy the movant's burden under Rule 59 and may be summarily dismissed by the district court. See W.R.C.P. 6(c)(4).

We addressed Essex's standing claims in Section II, see supra ¶¶ 41-45, and do not address them again here.

The contract provision states:
In the event that the proposed third amendment to the easements and covenants and restrictions relating to the Flaming Gorge Shopping Center has not been fully executed by all parties thereto prior to Closing, Buyers agree that they will cooperate in signing an amendment, if Seller so requests, that in substance would allow construction of a building not taller than 21 feet along the southerly 75 feet of Parcel II-D. This covenant shall survive closing.

Essex also contends that the district court erred by ignoring the ECRs' requirement to maintain a specific ratio of common area to building area. As with other ECR requirements, the parties could have modified or waived this requirement. For example, the proposed 1993 amendment simply stated:
[T]hat the said portion of Parcel II shall be specifically exempt from all provisions contained in the above described ECR, as amended, which would or may be interpreted so as to prevent, restrict or otherwise limit the use of said portion of Parcel II as a separate and independent "Building Area."
The fact that development on Parcel II-D may have required further ECR amendment does not render Basic's request for a modification invalid.

Essex relies on Dwan v. Indian Springs Ranch Homeowners Ass'n, Inc. , 2010 WY 72, ¶ 9, 232 P.3d 1183, 1185-86 (Wyo. 2010) for this proposition. In Dwan , we did not hold that contractual damages are never available for other parcel owners' violations of restrictive covenants. See id. We merely upheld the dismissal of Ms. Dwan's claim for monetary damages based on the specific language of the covenants at issue in that case.

We addressed Essex's standing claims in Section II and do not address them again here.

Federal precedent is highly persuasive due to the similarity of W.R.C.P. 60(b) and its federal counterpart. See supra ¶ 36.